[No. 7,970.—Department Two.]

## J. H. CARROLL v. F. A. SPRAGUE.

ACTION TO RECOVER PERSONAL PROPERTY—REPLEVIN—AMENDMENT.—In an action to recover personal property, the defendant justified as sheriff under an attachment at the suit of B. & H. against one E., who was alleged to be the owner of the property, and before the trial was permitted to file an amendment to his answer, setting up that the property had been replevied by the plaintiff. The Court refused leave to the plaintiff to file a supplemental complaint, setting up that after he replevied the property, part of it was again seized by the defendant under another attachment. On the trial evidence to prove the facts set up in the amendment to the answer was admitted, and evidence to prove the facts stated in the proposed supplemental complaint rejected. *Held:* There was no error.

ID.—PRIVILEGED COMMUNICATIONS—ATTORNEY—EVIDENCE.—The plaintiff, for the purpose of impeaching E., a witness for the defense, offered to prove certain communications made by E. to B., an attorney, who testified that he had incidentally done a great deal of business for E.; but there was no evidence that any professional counsel, advice, or aid had been solicited or given in relation to this particular property.

*Held:* The communication was not privileged, and the Court erred in excluding it.

ID.—INSTRUCTIONS—DEBTOR AND CREDITOR—PRESUMPTION.—The Court refused to instruct the jury as requested by the plaintiff, that B. & H. could not be regarded as creditors of E. at a period earlier than the date of the note, upon which their suit was based.

*Held:* There being no evidence that the relation of creditor and debtor existed between B. & H. and E. prior to the date of the note, the inference is that it did not exist, and the Court erred in refusing so to instruct the jury.

ID.—EVIDENCE—CONTRADICTORY TESTIMONY—INSTRUCTION—MAXIM.—The maxim, that "a witness false in one part of his testimony, is to be dis-

trusted in others," does not apply to false testimony given in some other action or proceeding. A witness may be impeached, by showing that he has testified differently in regard to the same matter in some other action; but a jury would be justified in believing his second instead of his first statement. The Court did not, therefore, err in refusing to instruct the jury that if E. believed, at the time of filing a petition in insolvency, that he owned the property in controversy, it was his duty to include it in his schedule, and his willful and intentional neglect so to do made his oath attached to said schedule false; that when a witness has intentionally perjured himself, in a judicial proceeding, the jury must regard his whole testimony with suspicion, and discredit it, except in such particulars as it is corroborated by other circumstances.

APPEAL from a judgment for the defendant, and from an order denying a new trial in the Superior Court of the County of Butte. HUNDLEY, J.

Action to recover the possession of seventeen mules, of the alleged value of two thousand seven hundred dollars. The defendant justified, as sheriff, under an attachment issued at the suit of Baker & Hamilton, against one Eckert, whose property the mules were alleged to be; and also denied that the mules were of any greater value than one thousand seven hundred dollars. The defendant was permitted to file an amendment to his answer, setting up that the property was replevied by the plaintiff after the suit was commenced. The plaintiff moved to file a supplemental complaint, alleging that, after the property was replevied by him, defendant, by virtue of other writs of attachment or executions issued at the instance of other creditors of Eckert, wrongfully seized and took into his possession, and has ever since wrongfully retained, ten of the aforesaid mules, etc., of the value of one thousand two hundred and fifty dollars; but the Court refused to permit the same to be filed, and afterwards, on the trial, refused to permit evidence to the same effect.

The verdict was as follows: "We, the jury, find a verdict for the defendant, seventeen mules at one hundred and twenty-five dollars per head." Judgment was entered for the seventeen mules, or their value, to wit, one hundred and twenty-five dollars each.

It appeared from the evidence that one R. S. Carey was the owner of the mules originally, and that Eckert wanted them to work his farm in Butte County; that Carey was

willing to sell them, provided that the plaintiff would indorse Eckert's note; which the plaintiff agreed to do if the title to the mules should be put in him; that thereupon Carey executed to the plaintiff a bill of sale as follows: "Sacramento, October 11, 1878. This is to certify that I have this day sold J. H. Carey twenty-four mules branded 91 and 16 for the sum of two thousand four hundred dollars. R. S. Carey." Afterwards the plaintiff paid the note. The plaintiff testified that the note had never been paid, and Eckert testified to the contrary.

On the trial of this case, Hiram Eckert, a witness called for defendant, testified that the mules in controversy were not the property of the plaintiff. On cross-examination, he was asked whether at a certain time and place in Oroville he did not say to one Burt that the mules in controversy in this case were the property of the plaintiff; to which the witness replied he did not. Plaintiff subsequently called said Burt, and after he was sworn, offered to show by him that at said mentioned time and place in Oroville, Hiram Eckert had told him that the mules in controversy in this case, were the property of the plaintiff. Defendant objected to said offer, on the ground that said communication was a confidential one, made while the relation of attorney and client existed between said Eckert and said Burt, and thereupon, in support of said objection, examined said Burt as follows: "Q. In any conversation you had with Eckert upon the subject, were you not his counsel? A. In one sense; and in another I was not; I had incidentally done a great deal of business for Eckert, and so had the late firm of Burt & Gale; Eckert was owing us several hundred dollars, and never paid us one dime for legal services; he came to me to take him through insolvency, in December last, or rather for the firm of Burt & Hamilton to do it; I absolutely refused to have anything more to do with him. I told him I never would put pen to paper again for him, and that our relationship ceased as attorney and client; it happened that General Hamilton, my law partner, came to Oroville within a day or two, and Eckert came in again. Hamilton said, in an off-hand way, 'I'll take it,' and he drew up Eckert's petition and schedule, and signed the

firm name to it.    I paid no attention to the proceedings, and did not consider myself in the case."

*George Cadwalader, Burt & Hamilton,* and *R. T. Devlin,* for Appellant.

The Court erred in refusing to allow the plaintiff to prove by Burt what Eckert had said to him in regard to the ownership of the mules.

The communication was not privileged.    (*Hebbard* v. *Haughian,* 70 N. Y. 54; *Day* v. *Moore,* 13 Gray, 522; *Gower* v. *Emery,* 18 Me. 79; *State* v. *McKinney,* 42 Iowa, 205; Weeks on Attorneys at Law, 277; *Heister* v. *Davis,* 3 Yeates, 4; *Rogers* v. *Dare,* Wright, 136; *Shaughnessy* v. *Fogg,* 15 La. Ann. 330; *Mulford* v. *Muller,* 3 Abb. N. Y. App. 330; *Allen* v. *Root,* 39 Tex. 589; *Turner* v. *Railton,* 2 Esp. 474; *McTavish* v. *Deming,* Anth. N. P. 155; *Satterlee* v. *Bliss,* 36 Cal. 489; *Martin* v. *Anderson,* 21 Ga. 301; *Brown* v. *Payson,* 6 N. H. 443; *Gower* v. *Emory,* 18 Me. 79; *Hager* v. *Schindler,* 29 Cal. 48; *Gallagher* v. *Williamson,* 23 id. 331; *Satterlee* v. *Bliss,* 36 id. 489.)

The Court erred in refusing to instruct the jury that Baker & Hamilton could not be regarded as creditors of H. Eckert, at a period earlier than the date of H. Eckert's promissory note, forming the basis of their suit.

If a delivery of possession was necessary, and it did not occur immediately, the sale or mortgage could only be void as against those who were Eckert's creditors at the time the transaction took place, or who became such before a delivery and while he was yet in possession.    (*Watson* v. *Rodgers,* 53 Cal. 401; Jones on Chattel Mortgages, § 346; *Parks* v. *Barney,* 55 Cal. 239.)

The Court erred in allowing defendant to amend his answer, and in refusing to permit plaintiff to file an amendment to his complaint, or a supplemental complaint.

If it was proper to permit defendant to show that the Coroner had taken the mules from him, it was an abuse of discretion to refuse plaintiff to show that the mules had since been taken from him and again delivered to the defendant.    The same rule should be applied to both parties

*Reardan & Freer*, for Respondent.

The plaintiff did not ask leave to amend his complaint, but to file a supplemental complaint. And to grant or refuse leave to file such a pleading is entirely discretionary, and can not be assigned for error; about this there is no conflict in the authorities.

But the matter set up in the proposed supplemental complaint was immaterial and impertinent, and tendered a collateral issue. If it had been allowed, the defendant then would have been compelled to answer and justify under process in another action, in no wise connected with, or related to, the one under which he justified in this, and this could be repeated as often as the plaintiff replevied, and some other creditor of Eckert attached.

The Court heard the evidence, and found as a fact that when the communication was made, the relation of attorney and client existed between Burt and Eckert, and that it was as client that Eckert made to Burt the communication, whatever it might be. (*Landsberger* v. *Gorham*, 5 Cal. 450; *People* v. *Atkinson*, 40 id. 285.)

The doctrine of *falsus in uno falsus in omnibus* has no application here.

SHARPSTEIN, J.:

We do not think that the Court erred in allowing the defendant to amend his answer; or in refusing to allow the plaintiff to file a supplemental complaint; or in admitting evidence to prove that the property replevied had been taken from the defendant and delivered to the plaintiff by virtue of the writ of replevin; or in refusing to admit evidence to prove that after the property was so delivered to the plaintiff, a part of it was seized by the defendant upon an attachment or execution issued in some other action than that in which it was attached before the commencement of this action. But we think the Court did err in sustaining the objection to the examination of Burt, who was called for the purpose of impeaching Eckert, a witness for the defense.

The communication which Eckert made to Burt in regard to the ownership of the property in dispute was privileged, if

made for the purpose of obtaining the professional advice or
aid of the latter in some matter relating to said property, and
that would be so if Eckert supposed at the time that Burt
was his attorney, although in fact he was not. But it was
incumbent on the party who objected to the examination of
Burt as to what Eckert had told him, to show that the com-
munication was privileged, and unless it was made when
Eckert was seeking professional counsel, advice, or aid in re-
lation to this same property, it was not privileged. It was
not enough that Burt or Burt & Gale had "incidentally or
otherwise done a great deal of business for Eckert." The
material question was whether any professional counsel, ad-
vice, or aid had been solicited or given in relation to this par-
ticular property. As to that we are left wholly in the dark.

There being no evidence that the relation of creditors and
debtor existed between Baker & Hamilton and Eckert prior
to the date of the promissory note which he gave to them, the
inference is that it did not exist before; and we think that
the Court erred in refusing to instruct the jury, as requested
by the plaintiff, that Baker & Hamilton could not be regarded
as creditors of Eckert at a period earlier than the date of
said note. If they desired to be, and it was in their power to
show that they were, they should have proved that they
were. Otherwise they could not be so regarded.

We do not think that the Court erred in refusing to in-
struct the jury that if Eckert believed, at the time he filed
his petition in insolvency, that he owned the property in
controversy, it was his duty to include it in his schedule, and
his willful and intentional neglect so to do made his oath
attached to said schedule false; and that when a witness has
intentionally perjured himself in a judicial proceeding, the
jury must regard his whole testimony with suspicion, and
discredit it, except in such particulars as it is corroborated by
other circumstances. "A witness false in one part of his
testimony is to be distrusted in others," is the language of
the Code. But this does not apply to false testimony given
in some other action or proceeding. Of course, a witness
may be impeached by showing that he has testified differently
in regard to the same matter in some other action or pro-
ceeding. But a jury would be justified in believing his

second, instead of his first statement, and therefore the instruction asked could not properly be given in this case. It was inappropriate.

The conclusion at which we have arrived as to some of the alleged errors makes it comparatively immaterial whether the Court erred in denying the motion for a new trial on the ground of newly discovered evidence, and we shall simply say that we do not think that the plaintiff made a sufficient showing to entitle him to a new trial on that ground.

Upon the principal issue in the case, we think that there was a substantial conflict in the evidence, and we therefore could not reverse the order denying the motion for a new trial, on the ground of insufficiency of the evidence to justify the verdict. But for errors which we have pointed out, the judgment and order must be reversed.

Judgment and order reversed.

MORRISON, C. J., and THORNTON, J., concurred in the judgment.