Chambers *v.* Chambers.

Judgment affirmed.

Filed Oct. 16, 1894.

———————•———————

No. 16,888.

CHAMBERS *v.* CHAMBERS.

CONVEYANCE.—*Of Expectancy or Remainder.—Constructive Fraud.*— Where an orphaned infant, being the actual owner of a part of a tract of land and the owner of the other part subject only to a life estate, the whole being worth three thousand dollars, is kept in ignorance of his actual legal rights by interested relatives, with whom he makes his home, and is induced, immediately after arriving at legal age, to execute a deed to the whole tract for five hundred dollars, there is such constructive fraud as entitles him to have the deed set aside.

SAME.—*Statute of Limitations.—Remainderman.—Life Tenancy.*—The statute of limitations does not begin to run against a remainderman during the life tenancy.

SAME.—*Construction of Deed.—Vested Remainder.—Postponement of Possession.*—A warranty deed conveying land to A for life, then to go in fee simple to B in the event that he lives to be twenty-one years old, vests the remainder in B but postpones the possession.

SAME.—*Sale of Remainder.—Adequacy of Price.—Life Estate not Considered.—Public Policy.*—In determining adequacy of the price paid to a remainderman, the life estate can not be taken into account, as the law, by reason of public policy, requires that the full market value be paid.

SAME.—*Relief from Fraud.—Limitation of Action.*—Upon a conveyance of land held in fee simple the statute of limitations begins to run when the deed is delivered, and relief from fraud practiced in procuring the conveyance must be sought within six years.

From the Boone Circuit Court.

*R. W. Harrison, J. G. Adams, N. D. Carter, C. S. Wesner* and *O. D. Wesner,* for appellant.
*H. C. Wills* and *T. J. Terhune,* for appellee.

Howard, J.—This was an action brought by the appellee against the appellant for the recovery of real estate.

The complaint was in two paragraphs. On the overruling of a demurrer to the first paragraph, the appellant answered the complaint by pleading the statute of limitations, and also by the general denial. To the first paragraph of the answer there was a reply in general denial.

The cause was submitted to the court, and on request of appellee the court found the facts, and also found conclusions of law, finding for the appellee as to a part of the land in dispute and for the appellant as to the remainder. Judgment was entered accordingly.

On appellant's motion the judgment was set aside and a new trial awarded under the statute. There was a change of venue from the regular judge; and the special judge below having been appointed to try the case, the cause was again submitted to the court for trial.

On request of appellee, the facts were again found specially, with conclusions of law. The second finding of facts and conclusions of law were substantially the same as on the first trial, as was also the judgment and decree which followed.

Numerous errors and cross-errors have been assigned.

The first question discussed by counsel is the ruling of the court upon the demurrer to the first paragraph of complaint, and the sufficiency of that paragraph to constitute a cause of action.

In the first paragraph of the complaint it is alleged that on September 30, 1859, Isaac R. Chambers, father of appellee, became the owner in fee simple of the land

Chambers v. Chambers.

in controversy, being eighty acres in Boone county; that on October 3, 1864, the said Isaac R. Chambers, by warranty deed, conveyed the undivided two-thirds of said land to John and Susannah Chambers, who were his father and mother, during their natural lives, and at the death of the survivor of them to descend in fee simple to appellee, in the event that appellee should live to be twenty-one years of age, but if he should die before that age then the fee simple to descend to the legal heirs of said life tenants; that in October, 1864, the said Isaac R. Chambers died intestate, leaving as his only heirs at law his widow Catherine C. Chambers, and his son the appellee; that afterwards, in partition proceedings, thirty-one and one-ninth acres off the north end of said land were set off to said widow, and to the appellee thirteen and three-ninths acres immediately south of and adjoining the land set off to his mother, and to the said John and Susannah Chambers thirty-five and five-ninths acres off the south end of said tract; that on the 3d day of January, 1866, the said Catherine C. Chambers died intestate, the owner in fee simple of said thirty-one and one-ninth acres, leaving the appellee, then four years old, as her only heir; that on the death of his mother the appellee became a member of the family of John and Susannah Chambers, his grandparents, and so remained until he was twenty-one years of age; that the administrator of the estate of Isaac R. Chambers, after the partition, sold said thirteen and three-ninths acres in payment of the debts of the estate, and said land was purchased by the said John Chambers, who, in 1874, died seized in fee simple of the same; that no guardian was ever appointed for appellee, and that the said John Chambers and his family had full and exclusive possession of said thirty-one and one-ninth acres set off to appel-

lee's mother, and received the rents and profits of the same; that when appellee became old enough to take interest in such matters, he frequently tried to ascertain from appellant and other members of the family what interest he had in said eighty acre tract, if any, but they always refused to give him any information on the subject, and did all in their power to divert his mind from said matter; that when appellee became twenty years of age he left the home and family of his grandmother, Susannah Chambers, the appellant being the real head of said family, and went amongst strangers to find some one who would act as his guardian for the purpose of looking after his interests, if he had any, in said real estate; that immediately afterward the appellant and some of his friends followed appellee, and persuaded him to abandon his intention of having a guardian appointed, and to return to the home of appellant, promising him an interest in the crops; that after appellant had so procured appellee to return home, he induced him to enter into a contract to sell his interest in said farm for the sum of five hundred and sixty-two dollars, the appellant at the time well knowing that the interest of appellee at the time was of the value of three thousand dollars, and appellee having no knowledge as to what such interest, if he had any, was worth; that on October 6, 1883, appellee became twenty-one years of age, and on the 7th day of October, 1883, appellant procured him to execute a quitclaim deed for the farm, in pursuance of said contract, paying to appellee on that day two hundred and sixty-two dollars, having paid him the other three hundred at the time the contract was made; that on the day when said deed was made said thirty-one and one-ninth acres which had been partitioned to appellee's mother, and which appellee had inherited from her in fee simple, was of the value of

twelve hundred dollars, and the thirty-five and five-ninths acres partitioned to John and Susannah Chambers was of the value of eighteen hundred dollars; that on August 20, 1891, the said Susannah Chambers died, and it was not until after her death that appellee ascertained what his legal rights were in said real estate, and that he had been defrauded in the manner and form hereinbefore set forth, by his uncle, the appellant; that on the 30th day of November, 1891, he tendered to the appellant the sum of five hundred and sixty-two dollars in legal tender money of the United States, and demanded of him that he should reconvey to appellee the real estate to which he had induced him to execute a quitclaim deed; but the appellant refused to accept the money and reconvey said real estate; and the appellee now brings said money into court, and tenders the same to appellant; that the rents and profits of said thirty-one and one-ninth acres have been of the value of one hundred dollars per year for the past six years. Wherefore appellee demanded that said quitclaim deed be set aside, that he be adjudged the owner of said land in fee simple, and the appellant liable for said rents and profits.

It is not necessary that actual fraud should be shown in a case like this. The fraud may be constructive. In Tiedeman Eq. Juris., section 226, constructive fraud is said "to include all those cases of wrongful advantage obtained by one person over another, under circumstances which do not prove that the party obtaining the advantage has been guilty of any willful misrepresentation or untruth; but in consequence of a wrongful advantage obtained, a court of equity considers it inequitable, and affords relief from such undue advantage by the employment of appropriate remedies. These cases are denominated constructive fraud, because the partic-

ular remedies are the same as if there had been actual fraud.''

The same authority, section 232, says that ''Expectant heirs and reversioners are considered as being peculiarly susceptible to imposition, fraud, and undue influence; and particularly in regard to contracts made by them for the purpose of securing the cash value of such expectant interests. Courts of equity scrutinize all such agreements very closely.''

In 1 Story's Eq. Juris. (13th ed.), section 337, the doctrine above noted is said to apply ''not merely to heirs dealing with their expectancies, but to reversioners and remaindermen dealing with property already vested in them but of which the enjoyment is future, and is therefore apt to be underestimated by the giddy, the necessitous, the improvident, and the young.  *  *  * And in regard to reversioners and remaindermen, if they are at the time necessitous, and laboring under pecuniary distress and embarrassment, an equally indulgent protection will also be afforded to them.''

In section 338 of the same work, the following is quoted as a clear statement of the law, in the same connection: ''In the earlier cases it was held necessary to show that undue advantage was actually taken of the situation of such person. But in more modern times it has been considered not only that those who were dealing for their expectations, but those who were dealing for vested remainders also, were so exposed to imposition and hard terms, and so much in the power of those with whom they contracted, that it was a fit rule of policy to impose upon all who deal with expectant heirs and reversioners the onus of proving that they had paid a fair price, and otherwise to undo their bargains and compel a reconveyance of the property purchased.''

To the same effect, see 1 Beach Eq. Juris., sections

145, 146, as to expectant heirs, reversioners and remain-dermen.

In 2 Pomeroy Eq. Juris., section 953, the author says: "Heirs, reversioners, and other expectants, during the lifetime of their ancestors and life tenants, are considered as peculiarly liable to imposition, and exposed to the temptation and danger of sacrificing their future interests, in order to meet their present wants. * * * The rule is well settled that all conveyances, sales, and charges, and contracts of sale or charge, of their future and expectant interest made by heirs, reversioners, and other expectants during the lifetime of their ancestors or life tenants, upon an inadequate consideration, will be relieved against in equity, and either wholly or partially set aside. In this instance, fraud is inferred from mere inadequacy of consideration. * * * In every such conveyance or contract with an heir, reversioner, or expectant, a presumption of invalidity arises from the transaction itself, and the burden of proof rests upon the purchaser or other party claiming the benefit of the contract to show affirmatively its perfect fairness, and that a full and adequate consideration was paid,— that is, the fair market value of the property, and not necessarily the value as shown by the life tables."

The foregoing authorities are quite sufficient to show that the contract and deed referred to in the first paragraph of the complaint were tainted with constructive fraud.

The appellee, who was the actual owner, in fee simple, of the thirty-one and one-ninth acre tract ever since the death of his mother, and who, on any theory of the complaint, was to become the owner in fee simple of the thirty-five and five-ninths acre tract on the death of his grandparents, was brought up in the family, of which his grandmother and his uncle, the appellant, were for

the greater part of his life the heads, in complete igno-
rance of his rights.    When almost a man, he finally had
vague surmises as to those rights, and sought amongst
strangers for advice, and to have a guardian appointed
to discover what his interests were, if he had any.    He
was followed by friends of appellant and persuaded to
return home and forego all thoughts of the guardian-
ship, with a promise that he should have a share of the
crops.

Soon after, when he was about twenty years old, a
bargain was struck with him by which he was to make
a deed of his interest in the farm as soon as he should
become of age, the consideration to be five hundred and
twelve dollars, the land being at the time worth three
thousand dollars.

We think the paragraph of complaint shows a good
cause of action.

Appellee's deed was made in 1883.  His grandmother,
who was life tenant of the thirty-five acre tract, did not
die until 1891, and the complaint to set aside the deed
was filed a few months later.    The action was begun in
time, at least as to the thirty-five acres.    The statute of
limitations does not begin to run against a remainder-
man during the life tenancy.    Luntz v. Greve, 102 Ind.
173; 13 Am. and Eng. Enc. Law, 720.

The facts found by the court are substantially those
alleged in the first paragraph of the complaint.

It is claimed as error that the court, "after finding
that the deed conveyed a portion of the land to John and
Susannah Chambers, and to the survivor of them, then
to go to Parson B. Chambers in fee simple, was an error.
The only time the deed mentioned could have passed
title was when it was executed and delivered.    Deeds are
not made to convey title in the future;  they must carry
the title at delivery or not at all."

Chambers *v.* Chambers.

We have set out counsel's contention on this point in full. We think it discloses no error in the court's conclusion of law.

While the remainder in the estate passed to appellee on the execution of the deed, yet the possession could not go to him during the life tenancy of his grand parents. In that sense it is strictly true, as the court concluded, that the land was conveyed to the grandparents for life, and then was to fall to appellee. His possession could only begin on their death. This is the reasonable interpretation of the deed.

In *Doren* v. *Gillum,* 136 Ind. 134, the words of conveyance in the deed were "convey and warrant to Levi Hubbard and Margaret Hubbard * * * to have and to hold the same during their natural lives, and each of their natural lives, and then to descend to William H. Hubbard and the heirs of his body."

It was there contended that the words "convey and warrant," in the premises of the deed, carried a fee to the first takers; that the word "descend" in the habendum clause was a word of limitation, and not of purchase, and implied an estate of inheritance in William H. Hubbard; that if, however, a life estate only was conveyed to Levi Hubbard and Margaret Hubbard then there was nothing to descend to William H., hence there was a contradiction, and the habendum clause being repugnant to the premises could not stand.

The court held that "the expression 'then to descend to William H. Hubbard and the heirs of his body' clearly refers to the time when said William shall come into the possession of the estate, and the remainder vested in him and became subject to levy and sale at the date of the execution of the deed. * * The deed creates a remainder interest in William H. Hubbard by purchase, and the use of the word 'descend' will not be allowed to

defeat or destroy the clear and well expressed meaning of the deed.''

So in the deed now under consideration the expression, ''then to go to Parson B. Chambers,'' considering the context, can only mean that the possession and enjoyment of the property shall go to him on the death of his grandparents.

Counsel agree that no inadequacy of consideration is shown for the quitclaim deed given by appellee to appellant. The consideration was five hundred and twelve dollars. It was proved on the trial, and found by the court, that the land, at the time, was worth twenty-eight hundred and thirty-five dollars. Counsel think that the incumbrance of the life estate should be taken into account in estimating the value. This the law does not permit in case of heirs, reversioners and remaindermen, making sale of their expectancy. The law looks upon such sales as gambling upon the lives of the ancestors or life-tenants, and so against public policy; and will only sanction the sale, as we have seen, when the full market value is paid. *McClure* v. *Raben*, 125 Ind. 139,

The court found that the thirty-one acre tract, inherited by appellee from his mother, was conveyed by the deed of appellee to appellant, and that the deed should not be set aside as to that tract. This counsel for appellee think was error, and cross-errors are assigned accordingly.

There is no doubt that the transaction was equally fraudulent with the conveyance of the thirty-five acre tract. But we think the statute of limitations was a good plea in answer to the complaint as to this tract. As to the thirty-five acre tract, held by the grandparents as life-tenants, the statute, as we have seen, did not begin to run until their death; but as to the thirty-one acre tract, which was held by appellee in fee-simple, the stat-

ute began to run at the delivery of the deed. Actions for relief against fraud must be commenced within six years from the date when the right of action accrues.

We find no error in the record.

The judgment is affirmed.

