[Civ. No. 2082.   Third Appellate District.—February 9, 1920.]

A. C. ONG et al., Appellants, v. JENNIE L. COLE, Respondent.

[1] DEEDS—ACTION TO SET ASIDE—FINDING OF DELIVERY—EVIDENCE. In this action to set aside a deed on the ground that it was never delivered by the grantor to the grantee, the testimony of the grantee and of the attorney who drafted the deed was sufficient to sustain the finding of the trial court that the deed was delivered to take effect as a present conveyance of the title to the property.

[2] ID.—CONFLICTING TESTIMONY—PROVINCE OF TRIAL COURT.—It is the province of a court to harmonize, if it can, the testimony of different witnesses, and if this cannot be done, to decide whose testimony to accept; and, similarly when there appears to be conflicting accounts of the same transactions given by the same person, it is the duty of the court to determine which statement it will accept as being in accord with the fact.

[3] ID.—MEANING OF WORD "DELIVERED"—USE IN POPULAR SENSE.— The word "delivered" is used both in a popular sense and in a technical sense, and when it is apparent from the evidence that the grantee, in instructing the officer of the bank with whom she deposited the deed to deliver it to her upon the death of the grantor, and in her testimony as to her understanding as to the time of such delivery, used the word in the popular sense, the court is justified in concluding that she had in mind her understanding with reference to the redelivery of the instrument to her that she might place it of record.

[4] ID.—DELIVERY OF DEED—INTENT NECESSARY—HOW ASCERTAINED. The change of possession of a deed from the grantor to the grantee, to be effective, must be accompanied with the intent that the deed shall become operative as such; but this intent must be ascertained by a consideration of all the attendant facts and circumstances.

[5] ID.—EMPLOYMENT OF ATTORNEY TO DRAW DEED—LEGAL ADVICE NOT SOUGHT—COMMUNICATIONS NOT PRIVILEGED.—Where an attorney is employed to draw a deed, but no facts are communicated by the grantor to him for the purpose of getting any legal advice from him, and he gives none, statements made by the grantor to him are not protected from disclosure by virtue of the provisions of subdivision 2 of section 1881 of the Code of Civil Procedure.

[6] ID.—FAILURE TO AFFIX REVENUE STAMPS AT TIME OF EXECUTION— EFFECT OF.—Failure to place United States revenue stamps upon a deed at the time it is executed does not render such deed void but only voidable by proof that the stamps were omitted with intent to defraud the government.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

4. General rules as to delivery of deeds, notes, 54 L. R. A. 865; 9 L. R. A. (N. S.) 224; 38 L. R. A. (N. S.) 941.

Effect of delivery of deed to grantee subject to a future extrinsic condition, note, 16 L. R. A. (N. S.) 941.

Delivery of deed as question of law or fact, note, Ann. Cas. 1914D, 108.

The facts are stated in the opinion of the court.

A. C. Ong and Tanner, Odell & Taft for Appellants.

Hahn & Hahn and Adams, Adams & Binford for Respondent.

ELLISON, P. J., *pro tem.*—The complaint alleges that the plaintiff, D. B. Ong, is the executor of the last will of Minnie R. Ong, deceased, and that the other named plaintiffs are devisees under the will of said deceased. Continuing, it states that said Minnie R. Ong, in her lifetime and at the time of her death, was the owner of a certain described piece of real estate situate in Los Angeles, California; that the defendant Jennie L. Cole now claims title to said real property by reason of a certain deed, which she claims was executed and delivered to her by said Minnie R. Ong in her lifetime. Plaintiffs allege that this deed was never executed as a deed, was without consideration, and was never delivered by Minnie R. Ong to Jennie L. Cole. The prayer of the complaint is that said deed be declared null and void and plaintiffs decreed to be the owners of said property.

[1] The court found that the deed was executed by Minnie R. Ong for a valuable consideration and by her delivered to Jennie L. Cole, and entered judgment for the defendant. Plaintiffs assert that the finding of the court as to the delivery of the deed is not sustained by the evidence.

The only witnesses examined on the trial were the defendant Jennie L. Cole and Mr. George W. Adams, the attorney who drafted the deed. Concerning the execution and delivery of the deed, the defendant testified that she was a trained nurse and had acted as such, and as housekeeper and companion, for Minnie R. Ong, deceased, for twenty years; that the husband of the deceased was an invalid for several years prior to his death and that she nursed him for several years until 1914, when he died; that thereafter she looked after his widow until her death, which occurred in 1916. Continuing, she testified: "I had conversation with Mrs. Ong with regard to the property after that, just prior to the execution of the deed, possibly a week or two, I

can't just remember the exact date. This conversation took place in the home and just the two of us were present. She simply said that she was anxious to deed the home to me, or she wanted me to have the home, because she appreciated all that I had done and the faithfulness and the care that I had taken of everything, and that she wanted to feel that I would have it, and she felt that she was not going to live long, and she wanted everything arranged so that I would have a home and the furniture, and always · have a place to stay. She felt that she wanted to do that, and that she and Mr. Ong had talked that matter over during his lifetime and he had made the remark, 'If I go before you, Minnie, I want you to look after Jennie.' Q. Did Mrs. Ong ever hand you the deed to that property? A. She did. Q. When and where was that deed handed to you? A. In Mrs. Ong's room at 161 North Mentor Avenue, in her den on October 15th, I think. The deed came that morning by the post, the postman left the deed, and I brought in the envelope and gave it to her in her room. I gave her the deed, or the paper, a business envelope, you know, of Adams, Adams and Binford, which was on the outside, and handed her the deed, and she took it from me, and I think she remarked possibly, 'It has come at last.' She took the deed, and I went on out in the kitchen; I was preparing lunch, and she called me in her room and says, 'Jennie, here is your deed, you had better take it down to the bank. . . . It is my wish that you should not have the deed recorded during my lifetime as I don't want any fuss with the relations.' I said: 'Minnie, your wishes shall be granted.' ''

Mr. George W. Adams testified, in substance, that he had been attorney for Mrs. Ong in settling her husband's estate. ''Shortly before her death she sent for me to come to her house in Pasadena. She stated to me that now the controversy over the estate of L. B. Ong had been settled and the property distributed, she wanted to make a deed to the home property to Jennie L. Cole. . . . She further stated to me that she wanted Miss Cole to have the property, meaning the home where she then lived, and that it was her purpose to deed the property to Miss Cole at that time rather than give it to her by any codicil to her will. She then instructed me to draw such a deed, which I did, and she then signed it. I took it to my office in order to

put my notarial seal on it and I then mailed the deed
back to Mrs. Ong.''

The foregoing testimony is ample to sustain the finding
that the deed was delivered to take effect as a present con-
veyance of the title to the property. It shows a putting
of the deed by the grantor into the possession of the grantee
accompanied by the words: ''Here is your deed. You bet-
ter take it down to the bank.'' The testimony of the de-
fendant shows that the handing to her of the deed was the
carrying out of a preconceived intention on the part of
Mrs. Ong to make her the owner of the property at that
time. The testimony of Mr. Adams is to the same effect.
He said Mrs. Ong did not want to give her the property by
codicil to her will and it was her purpose to deed the prop-
erty to Miss Cole at that time. ''She then instructed me to
draw such a deed which I did, and she then signed it.''

If it had been the desire and intention of Mrs. Ong to
so deal with the title that it would vest in the defendant
only upon her death, it seems reasonable to assume that
something along those lines would have been said to her
attorney.

Appellants claim that the testimony of the defendant
above referred to was in conflict with testimony given by her
on other occasions concerning the same transaction. It ap-
pears she was examined as a witness in the matter of the
estate of the deceased, Mrs. Ong, and, also, that her deposi-
tion was taken before trial in this action.

Plaintiffs introduced the testimony of defendant given
on these two previous occasions, and in their brief point out
what are claimed to be different and contradictory versions
of what occurred concerning the execution of the deed, and
it is now their claim that these contradictions are so
material as to destroy the effect, largely, of defendant's
testimony given at the trial, and, also, that these former state-
ments are evidence favorable to plaintiffs' case. To illus-
trate counsel's position and, without referring to all the
claimed contradictions, it will be sufficient to advert to
one or two. In probate proceedings these questions were
asked her: ''Q. Well, you stated you were requested by her
to hand it [the deed] to Mr. Hall. What did she say when
she requested you to do that? A. It had been understood
before—she had talked—as I remember it she says, 'Jennie,

here is the deed.' Q. And what then? A. And she said,. 'Take it to Mr. Hall.' Q. Take it to Mr. Hall and then do what? A. He was to keep it in his possession until her death.''

When her deposition was taken in this case she testified: "The postman brought a letter and a deed in a long envelope. I gave it to Mrs. Ong and she opened it. She was in her den and I was out in the other room busy. She called me and said, 'Come here.' I responded and she took the deed and said: 'Jennie, this is your deed. Now, you had better take it down to the bank and take care of it.' I think she said, 'Take it to Mr. Hall,' because that was where we did our business there at the bank, and I was personally acquainted with Mr. Hall, and I think she did say Mr. Hall. Q. What did she tell you to say to Mr. Hall? A. Not a word.''

It is to be noticed that in her first testimony she said she was to take the deed to Mr. Hall and he was to keep it in his possession until Mrs. Ong died. In her second deposition she testified that Mrs. Ong. told her to take the deed to Mr. Hall, but did not tell her anything to say to him. [2] It is the province of a court to harmonize, if it can, the testimony of different witnesses, and if this cannot be done, to decide whose testimony to accept. Similarly, when there appears to be conflicting accounts of the same transactions given by the same person, it is the duty of the court to determine which statement it will accept as being in accord with the fact. The court could accept the version of the transaction given by the witness at this trial, notwithstanding it might appear to be in conflict, to some extent, with statements made by her on other occasions.

[3] Counsel for appellants rely much upon a written memorandum that appeared upon the envelope in which the deed was inclosed when left with the bank. It was as follows:

"Union Trust & Savings Bank of Pasadena, California.

"Trust Department.

"Contents.

"The within deed is deposited by Jennie L. Cole, and is to be delivered to Jennie L. Cole upon the presentation of

satisfactory evidence of the death of Minnie R. Ong the grantor and not otherwise.

"JENNIE L. COLE."

It is claimed by appellants that this memorandum shows that it was the understanding, both of the grantor and grantee, that the deed was not to be delivered until the death of the former and that in taking the deed to the bank, defendant was simply acting as the agent or servant of the grantor. The defendant testified on the taking of her deposition concerning this indorsement on the envelope: "Why, I had the deed and I simply took it down there and asked Mr. Hall if he would keep the deed for me. And he first said he did not know whether he could or not. And then asked me to explain. I told him that Mrs. Ong had deeded the property to me and had delivered the deed to me, requesting me to bring it down there for safekeeping and would he take care of it for me, as near as I can remember, and he asked the question: 'Miss Cole, did Mrs. Ong deliver this deed to you?' and I said: 'Yes, sir,' and he said: 'Well, under the circumstances, I can take the deed and keep it for you.' Mr. Hall wrote this down after talking with me. He put the deed in the envelope and sealed it and then wrote this on the outside and I read it over and signed it. Q. Did that statement which you signed contain the substance of what you and Mrs. Ong talked about what was to be done? A. Practically as far as I can remember. Q. Then the deed was not to be delivered to you until after Mrs. Ong's death? A. That was the understanding."

It will be observed from this that the defendant took the deed to the bank; told Mr. Hall that Mrs. Ong had deeded the property to her and delivered the deed to her and had requested her to bring it to the bank for safekeeping and asked him to take care of it for her. The writing was all done by Mr. Hall and defendant signed it. The writing begins with stating that the deed is deposited by Jennie L. Cole. If she had taken it there as the servant of Mrs. Ong, it is reasonable to assume that the memorandum would have stated it was deposited by Mrs. Ong. Mr. Hall, in making out the memorandum, used the expression "to be delivered to Jennie L. Cole."

The word "delivered" is used both in a popular and in a technical sense. It was evidently not used by Mr. Hall nor understood by Miss Cole in its technical sense. She had already told him that Mrs. Ong had deeded her the property and delivered the deed to her. The word was evidently used by him and understood by her that when Mrs. Ong died she would call at the bank for the deed and he would let her have it. She had agreed with Mrs. Ong that she would not place the deed on record until Mrs. Ong died. She had no occasion then to get the deed from the bank and have it in her personal possession until the time came to have it recorded.

Similarly, in the last question and answer: "Q. The deed, then, was not to be delivered to you until after Mrs. Ong's death? A. That was the understanding." It is not to be thought that the defendant, not a lawyer, and not familiar with the significance attached to the word "deliver" had in mind, in answering the question, all that the word conveys to one using legal terms with legal accuracy, in saying that was the understanding. It is fair to believe she meant what she had said on several occasions, that it was the understanding that she was to place the deed with the bank for safekeeping, and when Mrs. Ong died, get it and place it on record.

In *Smith* v. *Smith,* 173 Cal. 725, [161 Pac. 495], it appears the grantor in a deed had delivered it to R. Grant Taylor with written instructions, as follows: "I herewith deliver to you two deeds, one to each of my sons, N. D. Smith and G. C. Smith, and direct that you keep and hold the same in escrow during my lifetime, and upon my death deliver them to N. D. Smith and G. C. Smith so that they may then take effect." It was claimed in that case that the use of the word "deliver" where it occurs the second time in the paper showed an intent not to pass the title at that time. Upon this feature of the case, the court said: "Appellant places great stress upon the words contained in the written directions to Mr. Taylor: 'Upon my death *deliver* them' [the deeds], and 'so that they may then take effect.' There is nothing in this language to prevent the present passing of title at the time of the giving of the deeds to Mr. Taylor, if the intention of the grantor was that it should then pass. Earlier in the letter of instruc-

tion Mr. Smith had used the technical language, 'I herewith deliver to you two deeds.' In view of all the evidence the court was justified in deciding that the word 'deliver,' used in the latter part of the writing, was employed in its general sense, meaning 'transmit' and that the expression, 'then take effect,' referred not to the vesting of title but to the time of enjoyment. (*Haug* v. *Schumacher*, 50 App. Div. 562, [64 N. Y. Supp. 310–313]; *Middleton's Heirs* v. *Middleton's Devisees*, 19 Ky. Law Rep. 1232, [43 S. W. 677]; *Newberry* v. *Hinman*, 49 Conn. 130–132; *Chambers* v. *Chambers*, 139 Ind. 111–119, [38 N. E. 334]; *Dove* v. *Torr*, 128 Mass. 38–40.)''

[4] Counsel for appellants have cited several decisions bearing upon the question of a delivery sufficient to pass title, and from them conclude that the delivery in this case did not measure up to the rule therein announced, but these cases go no further than to decide that to be effective it must appear that the change of possession of the deed from grantor to grantee was accompanied with the intent that the deed should become operative as such. This intent must be ascertained by a consideration of all the attendant facts and circumstances and we think such intent appears in this case.

[5] Appellants claim it was error to permit Mr. Adams to testify to what Mrs. Ong said to him when he was called in and asked to draw the deed. That such statements were protected from disclosure by virtue of subdivision 2 of section 1881 of the Code of Civil Procedure. This section has been considered by our higher courts in a number of cases, but the exact point now under consideration seems never to have been directly passed upon. Thus, in *In re Bauer,* 79 Cal. 312, [21 Pac. 762], it is said: ''When two persons address a lawyer as their common agent, their communications to the lawyer, as far as concerns strangers, will be privileged, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations.'' In this case defendant did not employ Mr. Adams and he was not acting as her attorney. In *Murphy* v. *Waterhouse*, 113 Cal. 467, [54 Am. St. Rep. 365, 45 Pac. 866], it is said: ''Where two persons are negotiating with each other in the presence of the attorney of one of the parties, the very na-

ture of the transaction, and the circumstances surrounding it, are inconsistent with the notion of a confidential communication between one of the parties and his attorney who happens to be present." The defendant testified that she was not present at the interview between Mrs. Ong and Mr. Adams, so the case does not entirely meet the situation.

In Wigmore on Evidence, section 2292, the rule as to privileges of an attorney is stated as follows: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relevant to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected from disclosure by himself or by the legal adviser, (8) except the client waives the protection," and again, at section 2297, the same learned author says: "In the United States, the drafting of a will has almost always been assumed (and naturally) to bring the testator's communications within the privilege. But for *deeds* and other instruments the privilege has been strictly construed, and where no legal problem has been expressly brought forward by the client, his communications concerning the mere drafting of the instrument have been commonly admitted."

The author quotes from *Hatton* v. *Robinson*, 14 Pick. (Mass.) 416, [25 Am. Dec. 415], as follows: "There are many cases, in which an attorney is employed in transacting business, not properly professional, and where the same might have been transacted by another agent. In such case, the fact that the agent sustains the character of an attorney, does not render the communications attending it, privileged; and they may be testified to by him, as by any other agent. We cannot perceive that the communications were made to the attorney by Winch with the purpose of instructing him in any cause, or engaging him in the conduct of any professional business, or of obtaining any legal advice or opinion. Here was no legal advice asked, no opinion requested as to the effect and operation of such a conveyance in point of law, and none given."

Another case cited by Mr. Wigmore is *Grimshaw* v. *Kent*, 67 Kan. 463, [73 Pac. 92]: "Again, for the purpose of showing deceased knew and understood the contents of the written contract at the time it was executed by her, the

witness, W. H. Burbage, who prepared the contract, was asked, 'Will you state what conversation, if any, occurred between yourself and Mrs. Elizabeth C. Grimshaw leading up to the execution of this contract?' The answer of the witness to this question was also excluded. It is contended, as witness was a lawyer, that the conversation requested was privileged. We think not. Here no relation of attorney and client existed. Any person at all familiar with business transactions could have performed the labor of drafting the contract in question as readily as the witness. As the purpose of the question was to place before the jury the mental capacity of deceased to know and understand the contract she was entering into with defendants, and as the question propounded was not for the purpose of varying or contradicting the terms of a written contract, the witness should have been allowed to answer the question.''

The testimony of Mr. Adams shows that Mrs. Ong communicated to him no fact for the purpose of getting any legal advice and he gave her none. She stated to him that she had decided to deed the property at that time to the defendant and asked him to prepare the deed. She could have had the same work done by any real estate agent or notary public. As said in *Hatton* v. *Robinson,* 14 Pick. (Mass.) 416, [25 Am. Dec. 415] : ''Here was no legal advice asked, no opinion requested as to the effect and operation of such a conveyance in point of law and none was given.''

It does not appear that any statement was made by Mrs. Ong to Mr. Adams for the purpose of getting any legal advice from him, and under the circumstances we hold that his testimony, as it appears in the transcript, does not come within the rule of privilege. It was not a case '' (1) Where legal advice of any kind is sought (2) from a professional legal adviser as such.'' (Wigmore on Evidence, sec. 2292), and it was not error to permit him to give the evidence.

[6] The record shows that at the time the deed was executed no United States revenue stamps were placed upon the deed by defendant. Upon getting it from the bank and before offering it for record she placed or caused to be placed upon it the proper stamps. Appellants claim that the delay in stamping the deed rendered it void. We

are unable to agree with him. In *Green* v. *Holway*, 101 Mass. 243, [3 Am. Rep. 339], it is said: "The only reasonable construction of all these provisions taken together is that an instrument not duly stamped at first is not by reason thereof absolutely void but only voidable by proof that the stamp was omitted with intent to defraud the government."

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 7, 1920.

Angellotti, C. J., Shaw, J., Lawlor, J., Wilbur, J., Olney, J., and Kerrigan, J., *pro tem.*, concurred.