[S. F. No. 16916.   In Bank.   Oct. 11, 1943.]

ALFRED H. McKNEW, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Walter H. Duane, Joseph P. Lacey and Paul A. McCarthy for Petitioner.

Jerold E. Weil for Respondent.

CURTIS, J.—Petition for review of an order of the Superior Court of the State of California in and for the City and County of San Francisco, adjudging petitioner guilty of contempt of court and directing that he be held in custody until he shall answer certain questions propounded to him at a hearing pending before Local Administrative Committee No. 4 of The State Bar in and for said city and county, which questions were set out in full in said order of commitment. On being informed that petitioner intended to institute proceedings to review said order in the superior court, a further order was made admitting petitioner to bail.

By an order to show cause of date January 9, 1939, petitioner was directed to appear before a local administrative committee of The State Bar to show why he should not be disciplined for professional misconduct, to-wit:

"Violating your oath and duties as an attorney and counsellor at law within the meaning of Subdivision 2 of Section 287 of the Code of Civil Procedure of the State of California, as the same are prescribed by Sections 278 and 282 of the Code of Civil Procedure of the State of California, and the commission of acts involving moral turpitude and dishonesty within the meaning of Subdivision 5 of Section 287 of the Code of Civil Procedure of the State of California, and in particular as follows:

"On June 15, 1937, one John McNeil executed a guaranty whereby he guaranteed the repayment of credit up to the sum of One Hundred Fifty Thousand Dollars ($150,000.00) to be extended by Continental Can Company to Stockton Food Products Company.

"Shortly thereafter Peter E. Fagan, representing the Continental Can Company, discussed with you, who were acting as said John McNeil's attorney, the financial status of said John McNeil. During the course of the conversations upon said subject had between you and said Peter E. Fagan you stated to said Peter E. Fagan that you knew of your own knowledge that said John McNeil had money on deposit in a San Francisco bank in excess of One Million Five Hundred Thousand Dollars, ($1,500,000.); that you had seen deposit books showing Seven Hundred Fifty Thousand Dollars ($750,000.00) to the credit of John McNeil; and that on one occasion you had seen said John McNeil make another deposit of Seven Hundred Fifty Thousand Dollars ($750,000.00).

"In addition to said oral statements you wrote to said

Peter E. Fagan on July 9, 1937, stating to him that said John McNeil had at that time on deposit, under his control, a sum of money many times in excess of One Hundred Fifty Thousand Dollars ($150,000.00), which said deposit would be made available to said John McNeil at a date not later than September 2, 1937.

"All said statements, both oral and written, made by you to said Peter E. Fagan were untrue, were known by you to be so at the time they were made by you to said Peter E. Fagan, were made by you for the purpose of deceiving said Peter E. Fagan and to induce him to extend credit to said Stockton Food Products Company."

A hearing was had upon said order to show cause before the local administrative committee. At this hearing, Peter E. Fagan, petitioner Alfred H. McKnew and said John McNeil were sworn and examined. Peter E. Fagan testified that McNeil negotiated with him for the purpose of securing certain credit from the Continental Can Company, of which Fagan was credit manager, for the Stockton Food Products, Inc., in which McNeil was interested. Fagan stated in substance that McNeil assured him that he had on deposit in a San Francisco bank a sum in excess of $1,500,000, over which deposit he had control and authority of disbursement. Fagan further declared that McNeil informed him that if he, Fagan, would communicate with petitioner Alfred H. McKnew, who was attorney for said McNeil, McKnew could satisfy him as to the reliability of the statements made to Fagan by McNeil. McNeil at no time informed Fagan as to the name of the bank in which said deposit had been made nor did McNeil inform Fagan that McNeil would reveal the name of the bank or the number of the bank account.

McNeil testified before said committee. He made no denial of any statement made by Fagan. He further testified that McKnew accompanied him to the bank where the deposit had been made and that he, McNeil, wanted McKnew to verify the facts of said deposit, and that McKnew was to keep the name of the bank a secret and not reveal it to other persons. He also testified that he showed the bank books to McKnew on the occasion of their visit to the bank; that McKnew was with him in the bank when a deposit was made in said bank account, and that he informed McKnew that he could see the figures and the numbers in the account but not the names, and that McNeil had covered up the names. McNeil was then asked by the examiner for the committee whether the deposit was in his own name, but refused to answer the question on

the advice of his counsel on the ground that the answer might tend to incriminate or degrade him. McNeil was then asked to state the name of the bank in which the deposit was made. Again on the advice of his counsel he refused to answer the question on the same constitutional grounds.

Petitioner testified before the committee that it was understood between him and McNeil that he was to keep the name of the bank a secret. He corroborated McNeil in every respect regarding the visit that the two made to the bank on the occasion of said deposit. McKnew was then asked to state the name and the location of the bank. He refused to do so, stating that the information as to the name and location of the bank was given to him before they went to the bank by his client, McNeil, with the distinct understanding that he would not disclose such information to any person, and that such information was privileged and confidential as having been received by him while acting as an attorney for his client, McNeil.

After petitioner had refused to answer these questions when testifying as a witness before the local administrative committee, proceedings were taken before said respondent court which resulted in an order directing him to answer the questions. A further hearing was then had before the committee and petitioner again refused to comply with the direction of said last-named order. Whereupon petitioner was cited before respondent court to show cause why he should not be adjudged guilty of contempt of court for his refusal to comply with the order of the respondent court directing him to make answers to said questions.

At the hearing on said order to show cause, the respondent court made and issued its order of commitment in the matter and adjudged petitioner guilty of contempt of court for failure to answer the questions. It was to review that order that this proceeding was instituted.

We think it clearly appears from the facts set forth in the record before us in this proceeding that on the occasion of petitioner's visit to the bank, at which time McNeil showed to him the bank book with the entries of deposits therein, petitioner was the general attorney for McNeil in legal matters in which McNeil was interested. In the original order to show cause issued by the local administrative committee, he was referred to as such, and the evidence both of petitioner and McNeil tends to show that such a relation existed between the two men. However, the evidence does

not show that the disclosures concerning which petitioner was examined and which he refused to divulge related to, grew out of, or were in any way connected with any existing professional employment of petitioner by McNeil. Without conflict, the evidence shows that McNeil was endeavoring to establish the financial rating of his company, and to prove to Fagan that the company was entitled to the extension of credit which McNeil had applied for. McNeil related to Fagan the circumstance of his depositing the sum of $800,000 in the bank, over which sum he claimed to have control, and referred Fagan to petitioner, who, he said, was present at the time the deposit was made and would corroborate his (McNeil's) statement respecting the deposit. Evidently McNeil's purpose in having petitioner accompany him to the bank at the time in question was to have petitioner witness the transaction and thereby be in a position to corroborate McNeil's claim that such a deposit had actually been made should McNeil have occasion in the future to require a witness to the transaction. The only service rendered by petitioner to McNeil, and the only service McNeil asked petitioner to render, was to act as a witness for him in the matter of the deposit in the bank of said sum of money. This service did not require any particular legal knowledge on the part of the person who might be asked to render it. It could have been performed as well and as effectively by a layman as by a lawyer. Therefore the question before us in this proceeding is whether disclosures made by a client to an attorney in a transaction of the nature just described are privileged and are protected by the provisions of section 1881, subdivision 2, of the Code of Civil Procedure of this state, which reads as follows:

"An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity."

It will be noted from this section of the code that the only subjects concerning which an attorney without the consent of his client may not be examined are communications made by a client to his attorney, or advice given thereon by him "in the course of professional employment."

Preliminarily it may be stated that the law is well

established that the party who relies upon the rule that the evidence sought to be elicited falls within the protection of the code provision has the burden of proof as to such relationship. (*Carroll* v. *Sprague*, 59 Cal. 655, 660; *Sharon* v. *Sharon*, 79 Cal. 633, 677 [22 P. 26, 131]; *Collette* v. *Sarrasin*, 184 Cal. 283, 288 [193 P. 571].)

In the early case of *Satterlee* v. *Bliss*, 36 Cal. 489, at page 509, we find the law relative to privileged communications between client and attorney stated as follows:

"Knowledge acquired during the time he is attorney is not privileged, unless it is acquired in the course and for the purposes of his employment."

In *Carroll* v. *Sprague, supra,* an objection was sustained to a question asked an attorney by the name of Burt, who was called for the purpose of impeaching a witness named Eckert, who had testified for the defendant. In holding that the trial court erred in sustaining the objection, this court said: (page 659)

"The communication which Eckert made to Burt in regard to the ownership of the property in dispute was privileged, if made for the purpose of obtaining the professional advice or aid of the latter in some matter relating to said property, and that would be so if Eckert supposed at the time that Burt was his attorney, although in fact he was not. But it was incumbent on the party who objected to the examination of Burt as to what Eckert had told him, to show that the communication was privileged, and unless it was made when Eckert was seeking professional counsel, advice, or aid in relation to this same property, it was not privileged. It was not enough that Burt or Burt & Gale had 'incidentally or otherwise done a great deal of business for Eckert.' The material question was whether any professional counsel, advice, or aid had been solicited or given in relation to this particular property. As to that we are left wholly in the dark."

In the case of *Collette* v. *Sarrasin, supra,* an attorney had drawn a will for his client, and was thereafter called as a witness to testify regarding the delivery of a deed by the client for whom he drew the will. An objection was sustained to questions asked the attorney respecting the delivery of the deed. On appeal the judgment was reversed, this court holding that said objection was erroneously sustained. On page 286, the court discussed the question in the following language:

"The fact that Mr. Wilson had drawn a will two years before and retained possession thereof did not establish the

relation of attorney and client with reference to the transaction concerning the deed. The only conversation with reference to the drafting of the deed, so far as we know, was the conversation with the defendant. The record leaves us wholly in the dark as to whether anything occurred between the witness and the deceased at the time the latter signed the deed, which would establish the relation of attorney and client. If Mr. Wilson acted as a mere scrivener in drawing the deed and if the deceased asked no advice concerning it and solicited no service from the attorney other than the delivery of the deed, it is clear that communications in that connection were not privileged, for the reason that the relation of attorney and client in the matter inquired about is not established and did not exist.''

The authorities in support of this ruling found in the cited case are from many of the leading courts of this country.

On page 288 of this same decision we find it aptly stated:

''It is manifest that if an attorney has drawn a will for a client and retained possession of it at the client's request, this fact alone would not constitute him an attorney as to every communication to him made after the execution of the will. The question as to whether or not he was acting in the capacity of an attorney and the communications to him were privileged must be determined with relation to the particular transaction involved in the inquiry, and the burden of showing such relationship is on the party objecting to the evidence.''

The particular transaction respecting which petitioner was interrogated was the deposit by McNeil of the money in the bank, and the particular information which it was sought to be gained from the questions asked petitioner was the name and location of said bank. This transaction, as we have before stated, was not shown to be connected with any professional employment of petitioner by McNeil. The name and location of the bank were not secured by petitioner in the course of any such professional employment. The information therefore respecting this transaction, and specifically as to the name and location of the bank in which the deposit was made, was not, under the decisions cited above, privileged. The questions propounded to petitioner as to the name and location of the bank should have been answered by him, and in refusing to so answer after being ordered to do so by the respondent court, petitioner was properly adjudged guilty of contempt.

The evidence before us clearly shows that McNeil neither asked petitioner for any legal advice nor did petitioner purport to give McNeil any legal advice respecting the transaction here involved. Under such a state of facts the law appears to be that any information gained by the attorney is not privileged. (*Ong* v. *Cole*, 46 Cal.App. 63, 73 [188 P. 812].) In the cited case the attorney testified to certain instructions relating to the delivery of a deed which the attorney had prepared for his client, which instructions were given him at the time the deed was prepared. It was held that the testimony of the attorney was properly admitted and in so holding this court said: (p. 73)

"The testimony of Mr. Adams shows that Mrs. Ong communicated to him no fact for the purpose of getting any legal advice and he gave her none. She stated to him that she had decided to deed the property at that time to the defendant and asked him to prepare the deed. . . . As said in *Hatton* v. *Robinson*, 14 Pick. (Mass.) 416 [25 Am.Dec. 415]: 'Here was no legal advice asked, no opinion requested as to the effect and operation of such a conveyance in point of law and none was given.'

"It does not appear that any statement was made by Mrs. Ong to Mr. Adams for the purpose of getting any legal advice from him, and under the circumstances we hold that his testimony, as it appears in the transcript, does not come within the rule of privilege. It was not a case '(1) Where legal advice of any kind is sought (2) from a professional legal adviser as such.' (Wigmore on Evidence, sec. 2292), and it was not error to permit him to give the evidence."

There are decisions to the effect that where an attorney is called in for the purpose of witnessing a conversation, or a transaction between his client and a third person, he may be compelled to testify both as to the conversation and also as to the transaction to which he was a witness. The case of *Mitchell* v. *Towne*, 31 Cal.App.2d 259 [87 P.2d 908] is in many respects such a case. There the court on page 265 discusses the question as follows:

"Appellant further contends that the trial court erred in admitting in evidence a letter addressed to Lawrence Livingston and signed by McClure; and in permitting the witness Wagner, an attorney in the employ of Livingston, to testify

concerning certain conversations between Livingston and Wagner. The foundation of this contention is that said communications were privileged communications between an attorney and his client. (Code Civ. Proc., sec. 1881, subd. 2.) The record shows that Wagner was called into Livingston's office for the purpose of witnessing the conversation and not in his professional capacity. It is true that the privilege extends to communications made in the presence of an attorney's clerk, but this is true only where the clerk is present in that capacity. Where, as here, he is present for the express purpose of witnessing a conversation and the client acquiesces in his presence as such, the case does not differ from one where statements are made in the presence of a third party who is not an attorney. The letter, to which reference was made above, was dictated by Livingston in the presence of Wagner and was then signed by McClure. Under these circumstances the privilege was waived both as to the letter and conversation. Communications between attorney and client are privileged only when they are intended by the client to be confidential (*Mission Film Corp.* v. *Chadwick Pictures Corp.*, 207 Cal. 386 [278 P. 855]), and if they are made in the presence of a third party, who is present as a witness, it cannot be said that they were intended to be confidential. Moreover, Code of Civil Procedure, section 1881, subdivision 2, expressly relates only to communications made to an attorney 'in the course of professional employment.' "

The leading case of *Coveney* v. *Tannahill*, 1 Hill (N.Y.) 33 [37 Am.Dec. 287] contains an interesting discussion by the Supreme Court of New York on numerous phases of privileged communications between attorney and client. The question as to whether an attorney who is called in to witness a business transaction between his client and a third person, may be compelled to testify over the objections of his client as to what took place at said meeting is discussed in the following manner: (p. 290)

"'I will not undertake to say how far the distinction between the communications and the acts of the client may extend, but there can be no good reason for excluding the attorney when he has witnessed a transaction in the way of business between his client and a third person; as the adjustment of an account, the execution of a deed, the payment of a sum of money, the giving up of securities, or the like. It is not necessary that a man should have an attorney to witness

his dealings with third persons; and if one is called in, I can see no reason why he, like any other person who was present, should not be sworn to prove what was done.''

Petitioner has not attempted to refute the force of any of the authorities cited above or to show their inapplicability to the present case against him. He has cited numerous authorities in support of the public policy of protecting communications between attorney and client, but he has failed to show that he has brought himself within the protection of that policy. We are in thorough accord with the rule of privilege under which an attorney is prohibited from disclosing information received by him in his professional relations with his client, and believe it should be rigidly enforced. But this rule has its limitations, as indicated by the provisions of section 1881, subdivision 2 of the Code of Civil Procedure, in confining its scope to communications made by the client and advice given thereon by the attorney ''in the course of professional employment.'' Petitioner has failed to show that the information which he was asked to divulge was acquired by him in the course of his professional employment by his client.

Finally petitioner contends that the Local Administrative Committee of The State Bar was without any authority to originate contempt proceedings against him. Section 6051 of the Business and Professions Code makes it the duty of the chairman of a local administrative committee which has a disciplinary proceeding pending before it, to ''report the fact that a *person under subpoena* is in contempt of the . . . committee to the superior court in and for the county in which the proceeding . . . is being conducted and thereupon the court shall issue an attachment . . . directed to the sheriff . . . commanding the sheriff to attach such person and forthwith bring him before the court.'' (Emphasis ours.) It does not appear that petitioner was under subpoena when he was testifying before said committee and refused to answer the questions set out in the order of commitment. On the other hand, he appeared before the committee in response to the order to show cause issued by it and, in support of his defense to the charges stated in the order to show cause, he was voluntarily sworn as a witness in said proceeding, and testified in his own behalf. It was while he was such a witness and was so testifying that he refused to answer said questions. By appearing before the committee and voluntarily testifying in the pro-

ceeding then pending, petitioner thereby waived the service of a subpoena upon himself. He was then in precisely the same position, in respect to his duty to testify and answer all pertinent and proper questions asked of him, as if his attendance had been compelled by the issuance and service of a subpoena upon him "to appear and give testimony before . . . the committee." No authority is cited by petitioner in support of his final contention and in our opinion it is without merit.

For reasons stated herein, the order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.