[Civ. No. 9061.   Third Dist.   Aug. 8, 1956.]

FRED KIRSTOWSKY et al., Petitioners, v. SUPERIOR COURT OF SONOMA COUNTY et al., Respondents; THE PEOPLE, Intervener.

[Civ. No. 9063.   Third Dist.   Aug. 8, 1956.]

THE CHRONICLE PUBLISHING COMPANY (a Corporation) et al., Petitioners, v. THE SUPERIOR COURT OF SONOMA COUNTY, Respondent; THE PEOPLE, Intervener.

McEnerney & Jacobs, Garrett McEnerney II, Robert R. Barton and Downey, Brand, Seymour & Rohwer for Petitioners in Civ. No. 9061; Cooper, White & Cooper, George A. Helmer and John E. Schaeffer, Cooley, Crowley, Gaither, Godward, Castro & Huddleson and John J. Hamlyn for Petitioners in Civ. No. 9063.

Downey, Brand, Seymour & Rohwer as Amicus Curiae on behalf of Petitioners in Civ. No. 9061.

Joseph Maddux, District Attorney (Sonoma County), for Respondents.

Albert K. Whitton, Robert H. Kroninger, Fred Cooper and Aubrey Grossman, as Amici Curiae on behalf of Respondents.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Assistant Attorney General, for Intervener.

SCHOTTKY, J.—Petitioners filed in this court a petition for a writ of mandate commanding the Superior Court of Sonoma County to vacate an order that petitioners and other members of the public be excluded from the courtroom during the trial of Charlotte Black. The petitioning corporations are corporations which publish newspapers that circulate widely in the county of Sonoma and adjacent areas. The individual petitioners are newspaper reporters who are employees of the petitioning corporations. Following the issuance by this court of an alternative writ, the People of the State of California, through the attorney general, sought and were granted permission to intervene in support of said petitions.

Respondent superior court filed a demurrer and answer to each of said petitions, the answer setting forth that the order excluding the public from the courtroom was based upon the following facts.

That on the 1st day of May, 1956, during the course of the trial of said action entitled *"The People of the State of California* v. *Charlotte Black,"* then proceeding in the courtroom of respondent court, and immediately after the jury

had been selected and sworn to try the said cause, the court declared a recess; that during said recess said defendant's counsel, Frank H. McAuliffe, outside of the courtroom, approached Donald Geary, the judge of respondent court, presiding at said trial, and stated that said defendant, Charlotte Black, desired to waive her right to a public trial; that said counsel further stated that the said Charlotte Black proposed to testify as a witness in her own behalf; that the matters to which she could testify would concern abnormal sexual practices enforced upon her of a highly revolting, shocking and offensive character and of a nature prejudicial to her; that said Charlotte Black was in a condition of extreme emotional disturbance and bewilderment at the prospect of testifying publicly as to said enforced sexual practices; that because of her said condition she would be unable, mentally, physically and emotionally, to assist and cooperate with her counsel in the presentation of her defense, or to testify fully, freely and completely, as a witness in her own behalf should the public not be excluded from the courtroom during said trial.

That at the conclusion of said recess said court reconvened, whereupon counsel for defendant moved the court that the sessions of court during the trial be closed and that the public be excluded therefrom; that the defendant personally, in response to questions asked her by the court, at that time stated that she desired to waive her constitutional right to a public trial.

That the respondent court, by and through said Donald Geary, judge thereof, in the exercise of its discretion and believing that said defendant, if required to testify publicly, would not be able to fully, freely and completely present her defense and would thereby be deprived of her right to a fair trial, and further believing that the publicizing of her testimony would not be in the public interest, and there being no objection on the part of the People to said motion and waiver, did grant the said motion and pursuant thereto did order that the public and press be excluded from the courtroom.

Prior to the date of the hearing upon the alternative writ the trial of Charlotte Black was concluded, the jury returning a verdict of guilty of murder in the second degree. She withdrew her plea of not guilty by reason of insanity, moved that judgment be imposed, and was thereupon sentenced to the state prison for women at Corona. However, because of the importance of the questions involved and the great public interest in the matter we proceeded to hear the oral argu-

ments. Extensive briefs have been filed by the parties and by a number of amici curiae in support of and in opposition to the position of petitioners.

All parties concede that because the trial of Charlotte Black was concluded on May 5, 1956, the question presented is now moot. ■ As a general proposition courts will not issue a writ of mandate to enforce an abstract right of no practical benefit to petitioner, or where to issue the writ would be useless, unenforceable or unavailing. (*Terry* v. *Civil Service Com.*, 108 Cal.App.2d 861, 872 [240 P.2d 691].) However, where the problem presented and the principle involved are of great public interest, the courts have deemed it appropriate to entertain the proceedings rather than to dismiss the same as being moot. (*Rattray* v. *Scudder*, 67 Cal.App.2d 123 [153 P.2d 433].) Since the problem presented and the principle involved in the instant proceedings are of great importance in the administration of the criminal law and are likely to arise in the future, we deem it appropriate to discuss the questions involved, even though, so far as the issuance of a writ is concerned, the matter has become moot.

Petitioners in their oral arguments and in their briefs have stated the principal issue involved herein to be: Does a trial court have jurisdiction to exclude the public (and the press) from the entire proceedings of a criminal trial where the defendant waives her right to a public trial, which waiver is acquiesced in by the prosecuting attorney?

Petitioners contend that there is a public right that criminal trials be conducted in open courtrooms, and that this right is recognized by the common law and by statutory and constitutional provisions. They assert that this right is separate from defendant's right to a public trial, and therefore cannot be waived by the defendant. They state that the public right could be based on three grounds: (1) common law, (2) statute and (3) a determination that the constitutional guarantee of a public trial to an accused was intended to include the common law right of the public.

■ In support of their contention that public trial is part of the common law they quote the statement of Sir Matthew Hale that evidence is given in "open court and in the presence of the parties, their attorneys, council and all bystanders." (History of the Common Law, 4th ed., p. 289.) They also quote the following: "All this evidence is to be given in open court, in the presence of . . . all bystanders" and "in the

presence of all mankind'' (Blackstone's Commentaries, Book 3, pp. 684, 685) ; ''All judicial trials are held in open court to which the public have free access'' (Jenks, The Book of English Law, p. 91) ; ''By immemorial usage, wherever the common law prevails, all trials are in open court, to which spectators are admitted'' (2 Bishop, New Criminal Procedure, § 957).

There can be no doubt that at common law trials were public and that this common law tradition has been recognized and approved by both our state and federal courts.

Petitioners cite sections 124 and 125 of the Code of Civil Procedure in support of their contention that the statutory law of California requires that court hearings be public. Said sections read as follows:

''124. The sittings of every court of justice shall be public, except as provided in the next section.

''125. In an action for divorce or seduction, the court may direct the trial of any issue of fact joined therein to be private, and may exclude all persons except the officers of the court, the parties, their witnesses, and counsel; provided, that in any cause the court may, in the exercise of a sound discretion during the examination of a witness, exclude any or all other witnesses in the cause.''

They argue that these sections are a declaration of the common law rules that trials shall be public and that the public has a right which is apart from the defendant's right to a public trial, defendant's right being grounded on the following language in section 13 of article I of our state Constitution: ''In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial.'' And also on section 686 of the Penal Code which provides: ''In a criminal action the defendant is entitled: 1. To a speedy and public trial.''

We are satisfied that both at common law and under our statutory law trials are intended to be public and open to the public with such exceptions as are specifically set forth in statutes, or under certain circumstances to which we will refer hereinafter. The underlying reason for public trials is well expressed by the United States Supreme Court in *Re Oliver*, 333 U.S. 257, 268 [68 S.Ct. 499, 92 L.Ed. 682], as follows:

''The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition. to the excesses of the English

Court of Star Chamber, and to the French monarchy's abuse of the lettre de cachet. All of these institutions obviously symbolized a menace to liberty. In the hands of despotic groups each of them had become an instrument for the suppression of political and religious heresies in ruthless disregard of the right of an accused to a fair trial. Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power."

And in *State* v. *Keeler*, 52 Mont. 205, 218 [156 P. 1080, 1083, L.R.A. 1916E 472, Ann.Cas. 1917E 619], it is stated:

". . . But it likewise involves questions of public interest and concern. The people are interested in knowing, and have the right to know, how their servants—the judge, county attorney, sheriff, and clerk—conduct the public's business. . . .

"But the public is interested in every criminal trial that court officers and jurors are kept keenly alive to a sense of their responsibility and the importance of their functions, and interested spectators by their presence are the most potent influence to accomplish this desired end."

The right of the public to attend criminal trials has not been directly presented to our California courts and the decisions which discuss the concept of a public trial have been appeals in which defendants have appealed from their convictions upon the ground that they had been denied a public trial. In *People* v. *Hartman,* 103 Cal. 242 [37 P. 153], our Supreme Court said:

". . . The doors of the courtroom are expected to be kept open, the public are entitled to be admitted, and the trial is to be public in all respects, as we have before suggested, with due regard to the size of the courtroom, the conveniences of the court, the right to exclude objectionable characters and youth of tender years, and to do other things which may facilitate the proper conduct of the trial."

Respondent in reply to the contentions of petitioners asserts that petitioners have overlooked the fact that the rule as to public sessions of the courts was established for the benefit and protection of the accused and not primarily for

the benefit of the public that the public might know what goes on in the courts. Respondent states:

"Petitioners seek to pervert this rule, designed for the benefit of the accused, into a privilege to be exercised by the public, and particularly the press, in opposition to and in diminution of the rights of a defendant. By this we mean to say that both the common law rule and constitutional or statutory provisions providing for public trials were and are designed to protect the accused from persecution and oppression—not to afford the public the absolute right to attend court sessions, but rather to provide for open sessions in the interest of the accused—the concept being that persecution and violation of a defendant's rights would not occur under the light of public scrutiny. In other words, the courts are generally open to the public to the end that a defendant may be assured of a fair trial."

Respondent then proceeds to argue that since the right to a public trial is guaranteed to a defendant for his own protection, it follows that he may waive it, and "that when this right of waiver is asserted by a defendant and acted upon by the court in the exercise of its sound discretion, the ordinary right of access to the court must be denied to the public and all of the public if the defendant so requests it."

We cannot agree with respondent that the waiver by a defendant of a public trial or a request by a defendant that the public be excluded from the trial is sufficient to justify the court in excluding the public. The right of the public to attend sessions of the court is too well established by the common law and by our statutory law to permit the exclusion of the public except in cases provided for by statutes, or under circumstances which make it a proper exercise of the court's discretion in order to accord the defendant a fair trial. Neither do we agree with the contention of the petitioners and the attorney general that, except in the instances specifically enumerated in the statutes, there can be no total exclusion of the public from all or any part of the court sessions.

Applying these views to the specific proceeding before us and to the order of exclusion involved in the instant case, it is apparent from the record that the respondent court made such order because it appeared to the court that the defendant Charlotte Black, who was on trial upon a charge of murder, was in such a condition of extreme emotional disturbance "that she would be unable to testify fully, freely and com-

pletely as a witness in her own behalf should the public be not excluded from the courtroom during the trial and would not be able to fully, freely and completely present her defense and would thereby be deprived of her right to a fair trial.''

As stated in *People* v. *Berling,* 115 Cal.App.2d 255, at page 270 [251 P.2d 1017]:

''. . . Constitutional and statutory provisions in reference to the conduct of a felony prosecution were designed to secure to every accused person a fair trial, not merely to those who are innocent. Full and strict observance of such rules is the primary responsibility of every tribunal assaying to try such a case.''

And as stated in *People* v. *Lynch,* 60 Cal.App.2d 133, at page 145 [140 P.2d 418]:

''. . . It is the bounden duty of courts to insist that a defendant be fairly convicted, because if he is not so convicted he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent. When a defendant is denied that fair and impartial trial guaranteed by law, such procedure amounts to a denial of due process of law (*Powell* v. *Alabama,* 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]).''

█ It is the duty of the judge who presides at the trial of a defendant in a criminal case to see that the defendant receives the fair trial guaranteed by both state and federal Constitutions. For the denial of a fair trial amounts to a denial of due process of law. . █ The provisions of section 124 of the Code of Civil Procedure that the sittings of every court of justice shall be public must be subordinated to the higher right and duty of the court under the Constitution to see to it that the defendant receives a fair trial and has a fair opportunity to present his or her defense. █ As stated in *Brydonjack* v. *State Bar,* 208 Cal. 439, at page 442 [281 P. 1018, 66 A.L.R. 1507]:

''Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government.''

█ We are satisfied that an order of the court that the public be excluded during the time defendant, Mrs. Black, was testifying would have been within the inherent power of the trial court under its duty to accord a fair trial to

the defendant. ■ In a note in 156 A.L.R. at page 289 it is stated:

"A criminal trial judge, in the exercise of a sound discretion, may exclude members of the public as it may become reasonably necessary in order to protect a witness or party from embarrassment by reason of having to testify to delicate or revolting facts, as a child, or where it is demonstrated that the one testifying cannot, without being freed from such embarrassment, testify to facts material to the case."

And in *People* v. *Byrnes,* 84 Cal.App.2d 72 [190 P.2d 290], a case in which a conviction was reversed on the ground that defendant had been denied a public trial, the court, after stating that the court had no discretion to exclude the public solely because of the salacious nature of the testimony, said at page 78:

". . . The exclusion of the general public upon this ground alone was a violation of the defendant's constitutional right. What we have said is not intended to apply to a situation in which it would appear to the court that a material witness, because of emotional disturbance, would be substantially prevented from giving testimony in the presence of a crowd of spectators."

■ However, we do not believe that the trial court should have excluded the public during the entire trial or for any part of the trial other than during the testimony of the defendant. If in the exercise of its discretion the court believed that defendant, because of emotional disturbance, would not be able to testify freely and completely if the public were not excluded during her testimony, it was within the discretion of the court to exclude the public during the time she was upon the witness stand, but in view of the statutory provision that the sittings of every court of justice shall be public, we think the court went too far in making its exclusion order effective as soon as the taking of testimony was begun and continuing it throughout the entire trial.

As stated at the outset, the petitioning corporations are newspaper publishers and the individual petitioners are newspaper reporters, but it is conceded that members of the press are in the same position as other members of the public and have no greater right to be present at court hearings than has any other member of the public. ■ If the court had the right to exclude the public during the time defendant was upon the witness stand it had the right also

to exclude the members of the press. The freedom of the press is in no way involved in this proceeding.

It would serve no useful purpose to review the numerous authorities set forth in the able briefs filed by counsel for the respective parties. No case has been cited in which the factual situation is the same and there is nothing in any of the authorities cited that is contrary to the views hereinbefore expressed.

Because, as hereinbefore pointed out, the matter is now moot, the petition for a writ of mandate is denied and the alternative writ heretofore issued is discharged.

Van Dyke, P. J., and Peek, J., concurred.