[S.F. No. 21439.   In Bank.   Jan. 30, 1964.]

D. I. CHADBOURNE, INC., Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; WILLIAM HARRISON SMITH et al., Real Parties in Interest.

724

726

Cresswell, Davis & Church and R. T. Cresswell for Petitioner.

Dunne, Bledsoe, Smith, Phelps, Cathcart & Johnson and Robert A. Seligson as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Hoberg, Finger, Brown & Abramson, Michael J. Kennedy, John H. Finger and James B. Werner for Real Parties in Interest.

Hersh & Hadfield and Le Roy Hersh as Amici Curiae on behalf of Real Parties in Interest.

PETERS, J.—The sole question presented by this mandate proceeding is whether a certain written statement, obtained by a representative of petitioner's insurance carrier and delivered to its attorney, was privileged as a matter of law,[1] and so protected from discovery, or whether the issue presented was purely factual. We have concluded that the statement of the witness was not privileged as a matter of law, and that a factual issue was presented to the trial court as to the existence of the privilege.[2] This being so, the determination of the trial court is binding upon us.

The pertinent facts are that William and Constance Smith, the real parties in interest, commenced an action for personal injuries in which they alleged that Constance was injured when she fell upon a sidewalk, as a result of the negligence of defendant D. I. Chadbourne, Inc., the petitioner. In response to interrogatories served upon it by the real parties, petitioner admitted that it had obtained the written statement of one John Makuszi, a person "who performed work on the sidewalk referred to in the complaint." When the real parties moved for an order allowing inspection of that statement (pursuant to § 2031 and subd. (b) of § 2016), petitioner opposed the motion solely on the ground that the statement was protected by the attorney-client privilege.

[1]Code of Civil Procedure, section 1881, subdivision 2, provides, in part, "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; . . ."

All code references, unless otherwise noted, are to the Code of Civil Procedure.

[2]Under both case law and the 1963 amendment to subdivision (b) of section 2016 (making work product of an attorney nondiscoverable under certain circumstances) an issue regarding work product may arise when witnesses' statements are gathered for delivery to an attorney. Petitioner did not base its opposition to inspection on that doctrine, but relied solely on the claim of absolute privilege, and hence the issue of work product was not presented to the trial court. It is not here involved. The sole question presented is whether the statement was or was not privileged as a matter of law.

Each party filed a declaration and a memorandum of points and authorities in support of their respective contentions. The respondent court ordered petitioner to allow inspection and copying of Makuszi's statement, setting forth therein that the order was predicated on ''good cause appearing therefor.''[3]

The declaration filed in support of the motion for inspection showed: that Makuszi had performed work on the sidewalk both before and after the accident, and had information relevant to the cause of action; that petitioner had obtained written statements from Makuszi and others, and had allowed the real parties to inspect all of such statements other than that of Makuszi; that petitioner refused to allow inspection of Makuszi's statement; and, that petitioner had failed to produce Makuszi for a noticed deposition, indicating that he was (and is) on duty with the Armed Forces in Germany.[4]

In opposition to the motion, petitioner filed the declaration of one Louis Rovens, showing that: declarant was an investigator and adjuster for a firm employed by petitioner's insurance carrier for the purpose of investigating accidents which are likely to lead to litigation involving persons or firms insured by such carrier; that the attorneys now appearing for petitioner were (and are) the attorneys for such insurance carrier, and the latter had directed declarant's firm to investigate all such accidents and transmit their reports ''to their attorneys''; that the policy issued by such carrier to petitioner required the latter to cooperate and furnish to declarant's employer (as agents for the insurance company) all information incidental to the defense of claims; that Makuszi's statement ''was taken by me [declarant] as part of the investigation and preparation for defense, and ... after plaintiff herein had engaged the services of her attorneys and the said statement ... was intended to be confidential and made for the purpose of being transmitted to and was transmitted to ... [the insurance carrier] for transmission to

---

[3]The record does not include the oral arguments, if any, nor was there any opinion or finding made by respondent court other than as quoted above. As a result, the good cause, or lack thereof, must be determined from the declarations filed in support and in opposition.

[4]The declaration also set forth further allegations regarding the real parties' need for inspection; but since petitioner did not oppose the motion on any ground save privilege, it is assumed that it concedes that sufficient cause for inspection of any but a privileged document was shown.

[its] attorneys, ... and said statement was given to me and not to D. I. Chadbourne, Inc., the employer of the witness and the defendant herein.''

If the facts set forth in the two declarations support petitioner's contention that Makuszi's statement was privileged as a matter of law, respondent court was required to deny the motion for inspection (§ 2016, subd. (b)). If, however, the claimed privilege does not appear as a matter of law, but presented a question of fact, then the determination of the trial court may not be set aside. ▮ When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it (*Holm* v. *Superior Court*, 42 Cal.2d 500, 507 [267 P.2d 1025, 268 P.2d 722]; *San Diego Professional Assn.* v. *Superior Court*, 58 Cal.2d 194, 202 [23 Cal.Rptr. 384, 373 P.2d 448]). ▮ The party claiming privilege carries the burden of showing that the evidence which it seeks to suppress is within the terms of the statute. (*Tanzola* v. *De Rita*, 45 Cal.2d 1, and cases cited at p. 6 [285 P.2d 897]; see also, *Brotsky* v. *State Bar*, 57 Cal.2d 287, 303 [19 Cal.Rptr. 153, 368 P.2d 697].) It follows that the writ should not issue unless privilege appears, as a matter of law, from the undisputed facts set forth in the declarations.

In support of its contention that it has met the burden required of it, petitioner relies almost exclusively upon the authority of *Gene Compton's Corp.* v. *Superior Court*, 205 Cal.App.2d 365 [23 Cal.Rptr. 250], and several appellate cases following it. *Compton's* does hold that ''report[s] and statements of employees concerning an accident on the employer's premises, sent, pursuant to the terms of an insurance policy, to the employer's insurance carrier, [are] privileged.'' (205 Cal.App.2d at p. 366.) That broad statement, followed in several later cases, would sustain the claim of privilege, as a matter of law, in every situation wherein a plaintiff in a personal injury action seeks the statement of a witness who is also an employee of an insured defendant. The correctness of that concept is the problem with which we are concerned. It has never, heretofore, been passed on by this court.

*Compton's* involved facts substantially similar to those now before us. There the appellate court held that in *Grey-*

*hound Corp.* v. *Superior Court* (56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266]) this court had placed its stamp of approval upon that portion of *Holm* v. *Superior Court* (*supra,* 42 Cal.2d 500) which had held the attorney-client privilege extended to the accident report of a bus driver, required by his employer (S.F. Municipal Ry.) to be executed at the time of the accident, and that such holding sustained the broad statement above quoted. That portion of the *Compton's* decision errs in several respects. In the first place, it fails to take cognizance of both the factual and legal distinctions involved in the *Holm* and the *Compton's* cases. In *Holm,* the employee (who was also a defendant) made his report directly to his employer under a standing rule requiring the same; and at the time plaintiff attempted to obtain such report, the employee was represented by the same attorney (the city attorney) to whom the employer had sent the report. Also, in *Holm,* this court held that whether or not the privilege existed must be determined after first ascertaining the dominant purpose of requiring the accident report in the first instance, and that the trial court must make that determination from the facts presented to it. In *Compton's* the employee was not a defendant, and was not even a person who could, under the facts, have been held responsible for plaintiff's injuries. At no point did that court discuss the employee's dominant or other purpose in making the report. Another error in the *Compton's* case lies in its assumption that this court, in *Greyhound* (*supra,* 56 Cal.2d 355), gave unqualified endorsement to the rule as stated in *Holm. Greyhound* dealt with the written statements of independent witnesses, and was not concerned with the statement or accident report of an employee. Because it was one of the first decisions interpreting the attorney-client privilege in light of the then new discovery statutes, it was deemed necessary, in that opinion, to review the basic rules and decisions which existed prior to the enactment of those statutes. In discussing *Holm,* the *Greyhound* opinion noted this factual distinction and, while it inferentially approved the rule that where a report is made for more than one purpose its confidential nature (and hence its privilege) must be determined by the dominant purpose, it expressly refrained from approving or disapproving the determination that the employee's accident report was protected by the attorney-client privilege. Thus, the basis of the *Compton's* decision is without the foundation claimed for it. But the greatest evil in *Compton's* lies neither in its reasoning nor in its result. The broad language used therein (a

portion of which is quoted above), taken together with the fact that it reversed the trial court's order authorizing inspection, suggests the interpretation that all accident reports and statements obtained by the representative of an insurance carrier from the employees of a corporate insured are privileged *as a matter of law*. Whether or not *Compton's* actually so held is of no moment; the point is that it has been so applied on several occasions.

- No petition for hearing was filed in *Compton's*. The problem first came to our attention in a petition for hearing in *Atchison, Topeka & S.F. Ry. Co.* v. *Superior Court*, 208 Cal. App.2d 73 [25 Cal.Rptr. 54]. There the railroad and its engineer sought (and obtained) a writ prohibiting the respondent court from giving effect to its order requiring them to allow the real party (plaintiff in a personal injury action) to inspect and copy the engineer's accident report. The factual situation was almost identical with *Holm*, in that the engineer was the employee whose negligence was alleged to have been the cause of the accident, and privilege was claimed on the basis that the dominant purpose of requiring his report was for delivery to the attorney who was to defend the action. It was also similar in that the report passed from employee to employer, and from it directly to the attorney; no insurance company or other intermediary was involved. Thus, *Atchison* might have been determined solely on the basis of *Holm*. However, at least insofar as this particular issue was concerned, *Atchison* relied entirely on *Compton's*. We denied the petition.

Almost immediately thereafter we were presented with a petition for hearing in *Atlas Heating & Ventilating Co., Ltd.* v. *Superior Court* (Cal.App.) 25 Cal.Rptr. 532, in which the facts were very similar to *Compton's*, and in which the appellate court held that the employee's statement was protected by the attorney-client privilege, predicating its decision solely on *Compton's*. A hearing was granted, but, before the matter was heard, *Atlas* caused it to become moot by either complying with the order to allow inspection, or by settling the action. A motion to dismiss was filed and, there being no objection, was granted.[5]

---

[5]In this action, as in *Atlas* (*supra*, 25 Cal.Rptr. 532), after a hearing was granted, petitioner complied with the order of the trial court, and then sought to have the proceeding dismissed as moot. That motion was opposed by the real parties and by the respondent court (the latter pointing out that there are many cases currently being held in abeyance

The problem involved obviously relates to the extent of the attorney-client privilege when the client is a corporation. The problem becomes complex because a corporation can speak only through an officer, employee, or some other natural person. Certainly, this fact should not result in an absolute denial of the privilege, nor should it lead to the conclusion that the privilege attaches to every report or statement made by a corporate agent and furnished to the corporation's attorney. The existence of such a privilege in favor of a corporate client has been assumed in many California cases, but the precise extent of the privilege seems never to have been discussed by the California appellate courts. In the federal courts, where the pretrial discovery procedures were pioneered, there is a wide divergence of opinion as to the extent of the corporate privilege. (For a good review of the federal cases see the article *Lawyer-Client Privilege* by Moses Lasky (1963) 38 State Bar J. 427.)

Although, undoubtedly, the privilege should not be denied to a corporate client in California there are several questions that have not been answered. What is the extent of such privilege? What tests are to be applied? What principles determine whether the natural person who speaks is speaking from the status of a client (actual or prospective), or is merely a witness whose unprivileged communication someone else is seeking to suppress under a claim of privilege? And where the element of confidentiality is challenged, whose intention to communicate confidentially is the criterion, that of the original communicant, or that of the insurance investigator who obtains the statement from the employee? Various settled rules complicate, rather than simplify, the answers to these questions. For example, it is well settled that a communication is not protected by the attorney-client privilege, even when made in the course of professional employment, unless the client intends that it be treated in confidence (*Solon* v. *Lichtenstein,* 39 Cal.2d 75, 79 [244 P.2d 907]). For it is the client, and not the attorney, who may claim the privilege (§ 1881, subd. 2). And that which was not privileged in the first instance may not be made so merely by subsequent delivery to the attorney (*San Francisco Unified*

pending our decision here). This court, in the exercise of its discretionary power (*DeGarmo* v. *Goldman,* 19 Cal.2d 755, 758 [123 P.2d 1]; *Di Giorgio Fruit Corp.* v. *Department of Employment,* 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487], and cases cited; *Kirstowsky* v. *Superior Court,* 143 Cal.App.2d 745, 748 [300 P.2d 163]), denied the motion to dismiss.

*Sch. Dist.* v. *Superior Court*, 55 Cal.2d 451, 457 [11 Cal.Rptr. 373, 359 P.2d 925]; *Holm* v. *Superior Court, supra*, 42 Cal.2d 500, 507-508). When these basic rules are applied to the usual corporate situation, a question arises as to whether the employee who was called upon to make a report or statement intended the same to be in confidence; or, if he had no specific intent, whether he was required by the corporation to make a statement, and (if so) whether the corporation's intent to transmit in confidence to its attorney is sufficient to supply the necessary element of original intent to communicate in confidence? At this point, the questions become embroiled in the concept of making privileged that which was not privileged in the first instance.

The existing California authorities are not helpful in the attempt to answer these questions. *Holm* (*supra,* 42 Cal.2d 500), which is most often cited for the proposition that the attorney-client privilege protects the statement of a corporate employee obtained for the purpose of transmitting it to the employer's attorney, holds (insofar as this point is concerned) merely that a statement required of an employee for two or more purposes, one of which would bring it within the attorney-client privilege, will be protected as privileged if that is determined to be the dominant purpose of making the statement in the first instance. That opinion did not discuss whose dominant purpose was under scrutiny. This is so because in *Holm* the corporate employee, who was called upon to give his statement, was also a defendant represented by the same attorney. Therefore, the privilege claimed was, in part at least, his privilege. It was not necessary for *Holm* to discuss the extent to which a corporation might be entitled to claim the privilege when the employee is not, himself, claiming the same. The result would have been identical had the bus driver, in *Holm*, made his statement directly to the attorney. But insofar as *Holm* did discuss the availability of the attorney-client privilege to corporations, it cited some cases from other jurisdictions (see 42 Cal.2d at pp. 509-510) and finally concluded that "the crucial question is the purpose for which the communication originated." But *Holm* failed to state *whose* purpose was involved. Is it the purpose of the employee, or that of the corporation? The cases which have followed *Holm* do nothing to clear up that question.

To speak of "dominant purpose" alone answers very few of the problems here involved. Assuming a situation where the employee was free to choose between making a statement

and refusing to speak, inquiry must be made as to *his* frame of mind. Would he have spoken had he not known that his words were to be communicated to *his* attorney, in confidence? If he would have freely communicated without knowledge of, or desire for, such protection, his communication was not within the purview of the privilege statute, the purpose of which is to encourage a client to make full disclosure to his attorney without fear that others may be informed (*People* ex rel. *Dept. of Public Works* v. *Donovan,* 57 Cal.2d 346, 354 [19 Cal.Rptr. 473, 369 P.2d 1]; *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 386; *City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418]). In such event the employer should not be free to claim the privilege on the ground that the freely made statement was subsequently passed on to its attorney. To allow such claim would be to hold that a litigant, into whose hands a nonprivileged communication falls, may create privilege in the subject matter merely by transmitting it to his attorney. That is not and should not be the law.

But, if we are to assume that the employee is not free to make or refuse a statement, but is required by the corporate employer to speak, then the employee's frame of mind ceases to be of great importance. In such a situation the corporation may be the client who desires to communicate *its* knowledge to *its* attorney, without fear that others may be informed. In such case, its basic reason for requiring the statement (including, but not confined to, the "dominant purpose") must be inquired into. In no event should the undisclosed dominant purpose of the person who obtains the employee's statement, standing alone, control the issue of privilege.

Other basic rules of privilege pose other problems when applied to corporations. It is axiomatic that a litigant may not silence a witness by having him reveal his knowledge to the litigant's attorney (*City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 238; *San Francisco Unified Sch. Dist.* v. *Superior Court, supra,* 55 Cal.2d 451, 457; *Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal. App.2d 122 [3 Cal.Rptr. 621, 86 A.L.R.2d 129]). Thus, when a corporation takes the statement of a witness, who also happens to be an employee, but who is in no other manner connected with the accident which he witnessed, does it not attempt to silence that witness by forwarding his statement to the corporation's attorney? Of course, the attorney-client privilege would not attach to the statement if the witness were not an employee (*Greyhound Corp.* v. *Superior · Court,*

*supra,* 56 Cal.2d 355). Does the mere fact that he happens to be an employee of the defendant corporation make his statement privileged when it would not be otherwise? Does the fact that a corporation may speak only through a natural person grant to it privileges which a natural person would not possess? If the employer were a natural person (or partnership) would the employee's version of the accident constitute a privileged communication where he was not a party thereto? These questions remain unanswered by any California decision.

Another principle that may affect this problem is the rule that even where a communication is privileged in the first instance, the privilege may be waived by failure to maintain confidentiality. Thus, where the client communicates with his attorney in the presence of other persons who have no interest in the matter, or where he communicates in confidence but later breaches that confidence himself, he is held to have waived the privilege (*McKnew* v. *Superior Court,* 23 Cal.2d 58 [142 P.2d 1]; *Marshall* v. *Marshall,* 140 Cal.App.2d 475, and cases cited at p. 480 [295 P.2d 131]). Of course, this does not mean that the privilege is waived simply because the communication was made through an agent of the client or of the attorney (*City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 236). But where, as here, there was not a direct chain of communication, we must ask ourselves to what extent the corporation should be allowed to disseminate the "privileged" information and still claim confidentiality. Here the communication in question was not made by employee to employer, but by employee to a third person. It is true that the employer's insurance policy required it to cooperate with the persons appointed for that purpose by its carrier, but it was not shown that the employer was ever consulted before the employee's statement was taken. And it was not shown that the employee was advised that his employer (or the employer's policy) required him to speak. Furthermore, the person who took the statement did not transmit it to either the insurance carrier or to the latter's attorney. He transmitted it to his employer (an independent contractor employed by an agent appointed by the insurance company). And his employer in turn transmitted it to the insurance company, which in turn transmitted it to an attorney appointed by it. To be sure, an insurance company may stand in the shoes of its insured for the purpose of claiming the attorney-client privilege (*New York Cas. Co.* v. *Supe-*

*rior Court*, 30 Cal.App.2d 130 [85 P.2d 965]), but to what extent? May it transfer the information through four hands (as here) without waiving the privilege? Through a dozen? No California authority has expressly discussed the length to which an insurance company may go in the transmittal of the statement of an employee of its corporate insured, without losing confidentiality. Some of these questions must be answered, for the answers are requisite to the determination of the single issue here involved.

■ Certainly the public policy behind the attorney-client privilege requires that an artificial person be given equal opportunity with a natural person to communicate with its attorney, within the professional relationship, without fear that its communication will be made public. As one writer has said, "The more deeply one is convinced of the social necessity of permitting corporations to consult frankly and privately with their legal advisers, the more willing one should be to accord them a flexible and generous protection." (Simon, *The Attorney-Client Privilege as Applied to Corporations* (1956) 65 Yale L.J. 953, 990.)

But reason dictates that the corporation not be given greater privileges than are enjoyed by a natural person merely because it must utilize a person in order to speak. If we apply to corporations the same reasoning as has been applied in regard to natural persons in reference to privilege, and if we adapt those rules to fit the corporate concept, certain principles emerge clear. ■ These basic principles may be stated as follows:

1. When the employee of a defendant corporation is also a defendant in his own right (or is a person who may be charged with liability), his statement regarding the facts with which he or his employer may be charged, obtained by a representative of the employer and delivered to an attorney who represents (or will represent) either or both of them, is entitled to the attorney-client privilege on the same basis as it would be entitled thereto if the employer-employee relationship did not exist;

■ 2. When such an employee is not a codefendant (or person who may be charged with liability), his communication should not be so privileged unless, under all of the circumstances of the case, he is the natural person to be speaking for the corporation; that is to say, that the privilege will not attach in such case unless the communication constitutes information which emanates from the corporation (as dis-

tinct from the nonlitigant employee), and the communicating employee is such a person who would ordinarily be utilized for communication to the corporation's attorney;

3. When an employee has been a witness to matters which require communication to the corporate employer's attorney, and the employee has no connection with those matters other than as a witness, he is an independent witness; and the fact that the employer requires him to make a statement for transmittal to the latter's attorney does not alter his status or make his statement subject to the attorney-client privilege;

4. Where the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the ordinary course of the corporation's business, the employee is no longer an independent witness, and his statement or report is that of the employer;

5. If, in the case of the employee last mentioned, the employer requires (by standing rule or otherwise) that the employee make a report, the privilege of that report is to be determined by the employer's purpose in requiring the same; that is to say, if the employer directs the making of the report for confidential transmittal to its attorney, the communication may be privileged;

6. When the corporate employer has more than one purpose in directing such an employee to make such report or statement, the dominant purpose will control, unless the secondary use is such that confidentiality has been waived;

7. If otherwise privileged under the rules stated above, a communication does not lose its privilege merely because it was obtained, with the knowledge and consent of the employer, by an agent of the employer acting under such agency;

8. For such purpose an insurance company with which the employer carries indemnity insurance, and its duly appointed agents, are agents of the employer corporation; but the extent to which this doctrine may be carried, and the number of hands through which the communication may travel without losing confidentiality must always depend on reason and the particular facts of the case;

9. And in all corporate employer-employee situations it must be borne in mind that it is the intent of the person from whom the information emanates that originally governs its confidentiality (and hence its privilege); thus where the employee who has not been expressly directed by

his employer to make a statement, does not know that his statement is sought on a confidential basis (or knowing that fact does not intend it to be confidential), the intent of the party receiving and transmitting that statement cannot control the question of privilege;

10. Similarly, where the corporate employer directs the employee, at the request of its insurance carrier, to make such a statement, the intent of the employer controls; and unless the insurance carrier (or its agent) has advised the employer that the employee's statement is to be obtained and used in such manner, it cannot be said that the corporation intended the statement to be made as a confidential communication from client to attorney;

11. Finally, no greater liberality should be applied to the facts which determine privilege in the case of a corporation than would be applied in the case of a natural person (or association of persons), except as may be necessary to allow the corporation to speak.

The facts of the instant case are meager. The declarations filed by the respective parties advised the respondent court that Makuszi had been an employee of the defendant corporation, that he had performed some work on the sidewalk in question both before and after plaintiff's accident, that he was unavailable by reason of being with the Armed Forces in Germany, and that defendant had in its possession or control his written statement. Although the employer was alleged to have been negligent in the premises, Makuszi was not named as a defendant, and there was no attempt made by either party to show that he was (or could be) responsible for the condition which caused the accident. Nor was there any claim that his statement contained any material or information which could not have been known to a nonemployee witness (i.e., there was no attempt to show that the statement was information which emanated from him in his capacity as a spokesman for the corporation). Of greater importance is the fact that there was almost a complete lack of any showing that the client from whom the communication emanated intended that the same be transmitted to its attorney, in confidence or otherwise. While it is true that the declaration filed in opposition to the motion to inspect showed that the *declarant* (the adjuster) intended the statement to be privileged, that declarant was the employee of a firm twice removed from the corporation's insurance carrier. There is no need to determine whether he was acting as an agent for the defendant corporation. His declaration was limited to a statement

of *his* intent. It did not disclose whether he advised either the management of the corporation or Makuszi of that intent. And, if it be inferred that he did so advise them, or be held that he was such an agent of the corporation that such advice was unnecessary, there was still absent any showing of the intent of the person making the statement. In fact, it might be inferred from the declaration that neither the defendant employer nor the employee had any cause to know that the latter's statement was to be transmitted to an attorney. The language of the declaration was that ''said statement was given to me and not to ... the employer of the witness'' and, further, that the statement ''was transmitted to Republic Indemnity Company of America for transmission to their attorneys. ...''

It cannot be said that the facts presented to the respondent court determine the question of privilege, one way or the other, as a matter of law.[6] Because of the nature of that showing, the trial judge was under a duty to make several factual determinations. He found that there was good cause for the inspection and that Makuszi's statement was not subject to the claimed privilege. We do not know whether that determination was made on the basis that the statement was not given with the intent that it be transmitted to the attorney in confidence, or whether it was made on the basis that Makuszi was not speaking for the corporation when he gave his statement. These, and many other prerequisite facts were left in doubt by the showing made. The trial judge undoubtedly had in mind the previously expressed rules that the statute is to be strictly construed against the claim of privilege, and that the party claiming such must maintain the burden. That burden was not sustained. The evidence presented to him was certainly inconclusive, and subject to contrary inferences. In such a situation we may not disturb his conclusion that the statement was not protected by the attorney-client privilege.

---

[6]We are not here concerned with what might have been the result had the trial judge held the statement to have been privileged. Conversely, however, we are concerned with petitioner's contention that the statement was privileged, as a matter of law, under the doctrine of *Compton's* (*supra*, 205 Cal.App.2d 365). To the extent that *Compton's* failed to recognize the respondent court's duty to decide a question of fact, it is disapproved. To the extent that *Atchison* (*supra*, 208 Cal.App. 2d 73) cites and relies exclusively on *Compton's,* it is also disapproved.

The alternative writ of mandate is discharged, and the petition for a peremptory writ is denied.

Gibson, C. J., Traynor, J., Schauer, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would grant the writ of mandate as requested, for the reasons set forth by Mr. Justice Shoemaker in the opinion prepared by him for the District Court of Appeal and concurred in by Presiding Justice Kaufman and Justice Agee. (See *D. I. Chadbourne, Inc.* v. *Superior Court* (Cal.App.) 31 Cal.Rptr. 581.)