Filed 12/23/25  Larson v. The Regents of the U. of Cal. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JEANIE LARSON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant and Respondent. | C100033<br><br>(Super. Ct. No. 34-2020-00278764-CU-WT-GDS) |

After the Regents of the University of California (the university) terminated Jeanie Larson's employment, Larson sued for retaliation and discrimination.  The trial court granted the university's motion for summary judgment, and Larson appeals.  Because Larson fails to meet her burden to show error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The university hired Larson as the chief information security officer of the University of California, Davis Health System (the system).  Less than one year later, the university terminated her employment.

1

Larson sued the university for gender discrimination, five counts of retaliation, and failure to prevent both. She alleged she was treated differently than her male counterparts and was retaliated against for (1) complaining about the disparate treatment, (2) complaining about workplace violence, and (3) voicing concerns over information security risks and compliance with the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA).

The university filed a motion for summary judgment, arguing that (1) Larson could not establish a prima facie case of retaliation or discrimination, and (2) alternatively, Larson could not overcome the university's legitimate reasons for terminating her employment, specifically arguing there was no evidence the termination was motivated by gender.

The university's supporting evidence included the following. As chief information security officer for the system, Larson was responsible for establishing and maintaining a corporate-wide information security management program to ensure that information assets were adequately protected. Larson was hired in February 2017 and reported directly to the system's interim chief information officer (interim chief) for one week and then to the system's chief information officer (chief) for about 12 weeks. In May 2017, chief changed the reporting structure and required Larson to report directly to an IT infrastructure manager (manager). Later that month, manager counseled Larson because chief was unable to find her during a major cybersecurity threat earlier that month. In July 2017, manager again counseled Larson, this time on her "lack of consistent/effective communication, lack of consistent timely work delivery and effective prioritization, lack of general team management, structure and clearly defined work functions/processes and lack of focus/attention during meetings."

One of Larson's primary tasks was to prepare a security plan and budget for the upcoming fiscal year (the plan). Many people offered Larson assistance with that task. But the plan Larson presented in August 2017 was lacking, and the one she presented the

2

following month remained deficient. Larson's inability to provide a complete plan delayed her budget and funding approvals.

Another employee saw several of Larson's performance issues, including her "lack of communication or failing to respond to correspondence, lack of understanding regarding [the system's] audit tracking system, and lack of engagement or leadership" with outside vendors.

In September 2017, manager counseled Larson on "her inability to effectively communicate, her misunderstanding of common principles with the IT department and her continued failure to create an actionable [plan]." In December 2017, manager issued a letter of intent to dismiss Larson. The system's chief administrative officer conducted a "Skelly" hearing and recommended upholding the termination. On January 30, 2018, Larson's employment was terminated.

Larson's memorandum of points and authorities in opposition to the summary judgment motion argued: (1) her whistleblowing activity was a contributing factor in her termination; (2) the university failed to show by clear and convincing evidence that she would have been terminated if not for her whistleblowing; (3) she exceeded the prima facie showing for gender discrimination; and (4) she provided substantial evidence her termination was in retaliation for her gender discrimination complaints. Larson did not oppose the university's specific argument that there was no evidence her employment termination was motivated by gender.

Larson disputed the majority of the university's material facts and offered 249 additional material facts. She presented the additional facts in the following categories: her qualifications for the position, including interim chief's belief in those qualifications; her duties as chief information security officer; her role as a HIPAA security officer; her shift in supervisors beginning with interim chief for one week, then chief for about three months, then manager as her direct supervisor until her termination, and interim chief as her second level supervisor from July 2017 until her termination; the state of the system's

3

IT security department when she was hired; her and her team's responses to daily cyber attacks on the system; her security initiatives impacting medical device control and patient safety; her complaints to management about the system's lack of HIPAA compliance, systemwide vulnerabilities, and threats to patient safety; her appeals to chief for resources and budgeting; her response to a security breach that occurred on May 17, 2017; chief's reporting structure change; manager's efforts to undermine her authority and interfere with her reporting duties; the system's working environment with respect to women; manager's efforts to sabotage her through shifting performance expectations, retaliatory performance write-ups, exclusion from meetings, usurpation of her budget, and denial of resources; an outside vendor's risk assessment of the system's compliance with HIPAA; and manager's termination of her employment.

Larson also offered evidence of the complaints she made: after she was "reassigned" to manager in May 2017, she met with chief and explained her concern over the conflict of interest; in June 2017, she complained to human resources that manager was harassing, targeting, and sabotaging her in her role and attempting to pressure her not to report security breaches; in May and June 2017, she complained to human resources and manager, respectively, that one of her employees was engaging in violent behavior; on August 1, 2017, she contacted an employee with "Labor Relations" and detailed issues she believed to be retaliation, discrimination, violence in the workplace, and tolerance of violence; on August 2, 2017, she submitted a workplace violence complaint to "RL Solutions" concerning the purportedly violent employee; on September 4, 2017, she filed a gender discrimination complaint with the university's Office of the President; on September 26, 2017, she submitted a pre-complaint inquiry to the Department of Fair Employment and Housing concerning her experiences with the system; on October 12, 2017, she sent an email to manager, interim chief, and others warning of IT risk; on November 15, 2017, she emailed interim chief regarding manager's efforts to bypass her; and on January 3, 2018, she submitted a complaint to the Office of Civil Rights at the

4

U.S. Department of Health and Human Services regarding HIPAA and security risk issues.

The trial court took issue with the parties' "voluminous filings" because they "muddle[d] the facts and focus[ed] on matters immaterial" to the motion. The trial court also found that many of Larson's purported disputes of material fact either did not constitute disputes or were not supported by the evidence cited. Ultimately, the trial court granted the motion, concluding: (1) Larson could not establish causation for her retaliation claims; (2) the system is not a health facility for purposes of Larson's retaliation claim under Health and Safety Code section 1278.5; (3) the university did not treat Larson any differently than her male counterparts; (4) Larson did not point to adverse employment action against her based on sex or gender; and (5) as to all Larson's claims, clear and convincing evidence established the university would have terminated her for legitimate, independent reasons.

The trial court entered judgment on October 6, 2023. Larson timely appeals.

DISCUSSION

A defendant moving for summary judgment has the initial burden of showing a cause of action lacks merit because one or more of its elements cannot be established or it is subject to an affirmative defense. (Code Civ. Proc., § 437c, subds. (p)(2), (o)(1).) Once a defendant meets this burden, the burden shifts to the plaintiff to show the existence of a triable issue of material fact. (*Id.*, subd. (p)(2).)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) Despite that de novo review, "we do not transform into a trial court." (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913.) As with any appeal, we approach a summary judgment appeal with the presumption the appealed judgment is correct. (*Meridian Financial*

*Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.)  The appellant still has the burden of showing error even if she did not bear that burden in the trial court.  (*Ibid*.)  That burden includes identifying the purported errors and supporting her argument that error occurred with authority, analysis, and specific citations to the record.  (*Ibid*.)  In other words, review on appeal is limited to issues that have been adequately raised and briefed.  (*Ibid*.)  A brief will not be successful if it presents "a mere challenge to [the] respondent[] to prove that the court was right."  (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116.)  Here, we conclude Larson fails to meet her burden.

I

*Retaliation Claims*

Larson sued the university for retaliation under five different statutes:  Labor Code section 1102.5, Government Code section 8547 et seq., Health and Safety Code section 1278.5, Labor Code section 6310, and Government Code section 12940, subdivision (h).  To establish retaliation under those statutes, Larson must show a connection between her protected activity and adverse action by the university.  (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 713 [Lab. Code, § 1102.6]; *Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 915-926 [Gov. Code, § 8547.10]; *Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1168 [Health & Saf. Code, § 1278.5]; *Rodriguez v. Laboratory Corporation of America* (C.D.Cal. 2022) 623 F.Supp.3d 1047, 1056 [Lab. Code, § 6310]; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453 [Gov. Code, § 12940, subd. (h)].)

This means the university could meet its summary adjudication burden as to Larson's retaliation claims by showing Larson could not establish the requisite connection.  Specifically, in the context of Larson's retaliation claims under Labor Code section 1102.5 and Government Code section 8547.10, the university could meet its burden by showing Larson could not establish her protected activity was a contributing factor in the adverse action.  (Lab. Code, § 1102.6; Gov. Code, § 8547.10, subd. (e); Code

Civ. Proc., § 437c, subd. (o).) And in the context of the other retaliation claims, the university could show that Larson could not establish a causal link between Larson's protected activity and the adverse action. (See *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 314; *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232-233 [substantial motivating factor under Gov. Code, § 12940].) If the university made that showing, Larson was required to show a triable issue as to the requisite connection. (Code Civ. Proc., § 437c, subd. (p)(2).)

Here, Larson does not argue that the university failed to meet its burden in the trial court to show Larson could not establish the requisite connection. Instead, Larson contends the trial court failed to discern from the evidence a pattern of systemic retaliation like that described in *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 (*Yanowitz*). In support, she relies on the evidence that she (1) objected to the reporting structure change as presenting a HIPAA conflict of interest and (2) later reported that manager was trying to pressure her into reporting fewer security breaches. Citing *City of Whittier v. Everest National Ins. Co.* (2023) 97 Cal.App.5th 895 (*Whittier*), at pages 914 to 916, she insists "there can be no dispute" these HIPAA-related complaints were protected activities. As to the adverse actions, she contends they took the form of a series of "subtle" injuries leading up to her termination, including manager "stripp[ing] [her] of the power to directly report security breaches to the Compliance Department," manager "[taking] over the reporting decisions," and manager "order[ing] Larson's own direct reports to bring all security breaches to him for assessment and determination." In her view, those cumulative actions leading up to her termination provide the necessary causal link.

We find Larson's arguments unpersuasive for four reasons.

First, her opposing briefing in the trial court did not cite *Yanowitz* or contend there was a pattern of systemic retaliation. The fact that she raised those concerns at oral

7

argument on the motion did not preserve them for review on appeal.  (See *Tindall v. County of Nevada* (2025) 112 Cal.App.5th 78, 90.)

Second, her cursory proclamation of protected activity related to HIPAA and citation to *Whittier* is unpersuasive:  *Whittier* has nothing to do with HIPAA, and the specific pages she cites concern *refusals* to participate in unlawful activity, but Larson does not claim refusals are at issue.  (See *Whittier, supra*, 97 Cal.App.5th at pp. 914-916.)

Third, Larson's descriptions of manager's "subtle" actions lack citation to the record.  Larson would have us comb the record for the evidentiary support that manager stripped Larson of power and the timeframes of when those actions occurred.  But it is the duty of a party to support arguments in its briefs by appropriate reference to the record that includes providing exact page citations.  (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205.)  The failure to provide adequate citations results in forfeiture of the issue.  (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 [providing citations elsewhere in the brief does not cure a failure to support specific legal arguments with citations to the record].)

And fourth, even assuming Larson established protected activities and adverse actions, she does not adequately explain how the protected activities caused or contributed to the adverse actions and agrees with the trial court that temporal proximity alone is insufficient in this case.  Although *Yanowitz* established that a course of conduct can rise to the level of an adverse action (*Yanowitz, supra*, 36 Cal.4th at pp. 1060-1061), it did not address causation.

In her reply brief, Larson cites *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413 for the first time.  According to this case, although "[a] long period between an employer's adverse employment action and the employee's earlier protected activity may lead to the inference that the two events are not causally connected," there may be a causal connection if the employer engages in a

8

pattern of conduct consistent with a retaliatory intent between the events. (*Id*. at p. 421.) This is the better authority for the point Larson is trying to make. Nevertheless, Larson fails to trace a pattern of conduct consistent with retaliatory intent. She contends that "evidence of all the retaliatory acts preceding [her termination] . . . compels the conclusion that the termination was retaliatory." She specifically focuses on manager's purportedly "adverse" actions toward her after she objected to chief about having to report to him and after she complained to human resources that manager was trying to strip her of power. In her view, those adverse actions were "retaliatory," but she does not explain what made them retaliatory or indicative of a retaliatory pattern, including when they occurred compared to her purportedly protected activity or how they were consistent with retaliatory intent.[1] Her contention is too conclusory to be persuasive, and we decline to search the record and develop arguments on her behalf.

Because we reach this conclusion, there is no need to address either: (1) Larson's challenges to the trial court's conclusion that the evidence showed the university would have terminated her for legitimate, independent reasons (Code Civ. Proc., § 437c, subd. (p)(2); *Lawson, supra*, 15 Cal.5th at p. 718) or (2) Larson's challenges to the trial court's interpretation of "health facility" under Health and Safety Code section 1278.5.

---

[1] For example, she does not argue or cite evidence in the record indicating manager was aware, or should be imputed with knowledge, of either the objection to chief or the complaint to human resources. (See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 73 (*Morgan*).) Relatedly, she does not address the undisputed evidence that: (1) chief was in his role for only about three months when interim chief took over in July 2017; and (2) interim chief served in that capacity when Larson was hired and believed her to be qualified for her position.

9

## II

### *Gender Discrimination Claim*

"[A]n employer may move for summary judgment against a discrimination cause of action with evidence of a legitimate, nondiscriminatory reason for the adverse employment action." (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158 (*Featherstone*).) By presenting such evidence, the employer shifts the burden to the plaintiff to present evidence that the employer's decision was motivated at least in part by prohibited discrimination. (*Id.* at pp. 1158-1159.)

Here, the university sought summary adjudication of Larson's gender discrimination claim on two grounds: (1) Larson could not establish a prima facie case and (2) Larson could not overcome the university's legitimate reasons for terminating her employment. In opposing the motion, Larson argued her evidence "far exceed[ed]" the prima facie showing for gender discrimination. But her opposition papers did not address the university's argument that she was terminated for a legitimate business reason. On this basis alone, once the trial court concluded that the university met its burden to show a legitimate business reason for Larson's termination, the trial court had sufficient reason to rule in the university's favor. (*D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 728, fn. 4 [where nonmoving party fails to oppose a ground for a motion, "it is assumed that [nonmoving party] concedes" that ground]; *Skillin v. Rady Children's Hospital & Health Center* (2017) 18 Cal.App.5th 35, 43 [on an appeal from summary judgment, we affirm on any basis supported by the record and the law].)

Also, on appeal, Larson does not dispute that the university met its burden to show legitimate, nondiscriminatory reasons for terminating Larson's employment. The question then becomes whether she met her burden to show that the university's decision was motivated at least in part by prohibited discrimination. To meet that burden, the evidence must be "sufficient to support a reasonable inference that discrimination was a

10

substantial motivating factor in the decision." (*Featherstone, supra*, 10 Cal.App.5th at p. 1159.) That showing can be made either: (1) indirectly, by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' " (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005); or (2) directly, by showing that unlawful discrimination more likely motivated the employer. (*Morgan, supra*, 88 Cal.App.4th at p. 68.) In either case, "[t]he employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination.' " (*Featherstone, supra*, 10 Cal.App.5th at p. 1159.)

Larson contends she offered three categories of evidence that individually and collectively met her burden. As we will explain, her contentions are unpersuasive.

First, Larson contends her evidence was sufficient because it showed she was treated differently from male managers. We disagree. Larson lists the ways she claims she was treated differently from those employees. But she does not explain how she was similarly situated to them, nor does she cite evidence in support of the similarity. (See *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 172-173 [plaintiff must provide evidence to show employer treated a similarly situated employee differently]; *Gupta v. Trustees of California State University* (2019) 40 Cal.App.5th 510, 519.) Also, the only evidence Larson cites in support of disparate treatment is (1) the statement in her declaration that she was the only female manager in the IT security department at her level and (2) the statement she provided in support of the complaint she submitted to the university's Office of the President. The first statement does not lead to an inference of disparate treatment, and the second consists of allegations, not evidence, of disparate treatment. (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433

11

(*King*) [plaintiff's subjective beliefs and uncorroborated and self-serving declarations do not create a genuine issue of fact].)

Second, Larson contends there was evidence showing manager's persistent efforts to "humiliate, bully, sabotage, and undermine" her. She provides a bulleted list of those efforts followed by a block of record citations. In her view, this evidence supports the inference that manager wanted to "get rid of her." This contention misses the mark. Larson's block of record citations does not comply with the applicable rules and frustrates our ability to evaluate her position. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Also, even if we agreed with Larson that the evidence showed manager wanted to "get rid of her," Larson does not identify evidence allowing a trier of fact to infer that gender was behind that desire. (See *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1531-1532; *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1157 ["[a] personal grudge can constitute a 'legitimate, nondiscriminatory reason' for an adverse employment decision"].)

And third, Larson contends she showed pretext by adequately "disputing" *one* reason for her termination. Specifically, she contends she provided evidence, in the form of her own declaration, disputing the university's assertion that she failed to present a sufficient plan. But Larson doesn't specify what statements she made in the declaration or how they created a dispute. More importantly though, her burden was not to simply dispute whether she presented a sufficient plan, or whether manager's assessment of the plan was correct; rather, her burden was to show " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [manager's] proffered legitimate reasons for its action that a reasonable factfinder could [(1)] rationally find them "unworthy of credence," and . . . "[(2)] infer that [the university or manager] did not act for [the asserted] non-discriminatory reasons." ' " (*Hersant, supra*, 57 Cal.App.4th at p. 1005, italics omitted; *ibid* [showing employer's decision was wrong or mistaken is insufficient].) Larson does not explain how her evidence met that burden. Nor does she

12

explain how it supported a "rational inference that intentional discrimination, on grounds prohibited by [Government Code section 12940], was the true cause of [manager's] actions." (*Guz, supra*, 24 Cal.4th at p. 361, italics omitted; see *id.* at p. 361 ["an inference of intentional discrimination cannot be drawn solely from evidence . . . that the [employer] lied about its reasons"].)

In a separate portion of her opening brief, Larson contends she raised triable issues as to the other grounds for her termination. This contention fails for the same reason as the last. Larson points to a September 27, 2017 email she sent to manager in which she responded to his notes from his performance improvement meeting with her the week before. And she refers to evidence purportedly showing that manager's criticisms of her performance were wrong or based on manager's lack of competence. As covered, Larson cannot simply show manager was wrong or mistaken, and she does not explain how the evidence shows (1) manager's proffered grounds for termination were unworthy of credence and (2) gender discrimination was the true cause of manager's actions.[2] Also, Larson's email response to manager is unpersuasive. She does not cite evidence corroborating the unsworn statements in the email, so we reject her contention that it created a genuine issue of fact. (See *King, supra*, 152 Cal.App.4th at p. 433.)

---

[2] In her reply brief, Larson contends she provided other evidence showing manager's criticisms were unjustified and invalid, citing another employee's testimony. Because the university was not given the opportunity to respond to this contention, we treat it as forfeited. (*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 997.) In any event, it suffers from the same defects as her other pretext contentions.

13

## DISPOSITION

The judgment is affirmed.  The university is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)&(2).)


/s/                      
MESIWALA, J.


We concur:


/s/                      
KRAUSE, Acting P. J.


/s/                      
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.